JULIUS J. FUCHS and MARY PHILLIPS, Executors of Estate of ADOLPH ABBEY, v. WILLIAM H. LEAHY, Appellant.—9 S. W. (2d) 897.

Division One, October 3, 1928.

48

*Caulfield & Bartlett* for appellant.

*Abbott, Fauntleroy, Cullen & Edwards* for respondents.

RAGLAND, J.—This case comes to the writer for opinion on reassignment. It is an appeal from the Circuit Court of the City of St. Louis. The respondent, Adolph Abbey, has died pending the appeal, and the cause has been revived in the name of his executors. In the statement and opinion which is to follow he will be referred to as plaintiff, and the appellant Leahy as defendant.

The petition on which the cause was tried, after setting forth that on the 13th day of October, 1920, plaintiff was the owner of certain real estate on Easton and Semple Avenues in the city of St. Louis and that on said date defendant was the owner of certain other real estate on Lindell Boulevard in said city, proceeded as follows:

"Plaintiff says that on October 13, 1920, he entered into a contract with one Russell T. Padfield for the exchange of said properties, and it was agreed that the Lindell Boulevard property, subject to deeds of trust aggregating $41,000, should be exchanged at the price of $60,000 for the Semple and Easton Avenue property, which was then subject to deed of trust for $16,500, $602 interest on said deed of trust and $525 taxes, at the price of $45,000, leaving a balance due plain-

tiff of about $9500, as the difference in the values of said properties, and it was further agreed that plaintiff should advance or loan to the person owning the Lindell Boulevard property the sum of $6000, in cash, and that said person would give his notes to plaintiff in a sum sufficient to cover both the $6000 advanced or loaned and the $9500, the difference aforesaid, and pursuant to this arrangement, on or about October 22, 1920, the plaintiff conveyed or caused the Easton and Semple Avenue properties to be deeded to Padfield, and the said Padfield caused said Lindell Boulevard property to be conveyed to C. Youdel, trustee for plaintiff, and the plaintiff then and there advanced or loaned to Padfield the said sum of $6000, and the said Padfield gave to plaintiff his promissory notes for $15,500 to cover said cash advanced and the difference between the properties exchanged, and the said Padfield secured the same by a second deed of trust on the Semple and Easton Avenue property.

"Plaintiff says that the defendant, his agents and servants, for the purpose of inducing him to advance said sum of $6000 and accept the notes of Padfield for said sum and for the said ¨9500 difference falsely and fraudulently represented to plaintiff that Russell T. Padfield was the true and lawful owner of a large amount of property, including said Lindell Boulevard property, and that the said Padfield would receive as his own the $6000 advanced, and that the said Padfield was a rich man, perfectly solvent and able to pay and satisfy the notes given for the $6000 cash advanced, or loaned, as well as the notes for $9500, representing the difference in the exchange of properties, and further for the purposes aforesaid said defendant, its agent and servants, falsely and fraudulently represented to plaintiff that the Lindell Boulevard property was of the cash value of $60,000.

"Plaintiff says that he believed said representations to be true, relied thereon, and was deceived thereby, and induced to pay out and advance the said sum of $6000 in cash to said Padfield, and to convey the Semple and Easton Avenue property to him and accept the notes of the said Padfield for the sum of $6000 cash advanced, and for $9500, the difference owing to him on account of the exchange of said properties.

"Plaintiff further states that said Padfield was a straw man used by Leahy and has repudiated the entire transaction, and announced that he never intended to pay anything on account of said transaction, and th said Padfield and the said Leahy have failed and refused to pay any of the said obligations entered into or assumed; have failed to pay the taxes on the property conveyed to him, amounting to $525, and have failed to pay the interest due on $16,500 on prior incumbrance on said property, which amounted to $602, and plaintiff says that by the terms of said exchange said Padfield as-

sumed said taxes and said interest, and agreed to pay same, and it was specifically agreed that said taxes and interest should be paid at the time of the exchange out of said sum of $6000 and out of the further sum of $185.26, which plaintiff at the time of said exchange advanced to said Padfield, and plaintiff says that by reason and in consequence of said Padfield and said Leahy's failure to pay said obligation.., a default occurred and said property on Semple and Easton Avenue was sold under the first deed of trust at public auction for $20,000, and that the excess, after deducting costs and expense of sale, was applied as a credit on the series of notes, aggregating $9500, given to plaintiff on account of the difference on the exchange of said properties. . . .

"Plaintiff says that Padfield, at all times mentioned herein, was wholly insolvent and took title to said property and received said $6000 for said defendant as a straw man used by defendant to obtain said money and property.

"Plaintiff, therefore, says that he has wholly lost the balance due him on the series of notes, aggregating $9500, given for the difference in the exchange of properties, and that the balance due on this item is $7114.23; and that he has wholly lost the said sum of $6000 advanced or loaned by him on the 22nd day of October, 1920, and that he has been damaged in the said sum. Plaintiff says that defendant received the full benefit of the property for which the $9500 notes were given, the same having been placed in Padfield's name as a straw man for the use of Leahy; that he also received and retained the $6000 cash advanced or loaned on October 22, 1920, and the premises considered, plaintiff says he is entitled to a judgment against defendant as and for money and property had and received in the sum of two items aforesaid, to-wit, in the sum of $13,114.23, together with interest thereon since the 22nd day of October, 1920, at the rate of six per cent per annum, for which sum and costs he prays judgment.''

The answer was a general denial, coupled with special defenses. These defenses need not be set out as they have no bearing on the questions presented for determination.

The evidence given on the trial, aside from that going to the issue of fraudulent representations, disclosed but little conflict. Sometime shortly before October 13, 1920, plaintiff placed in the hands of one Altheimer, a real estate broker, for sale or exchange his property on Easton and Semple Avenues. Within a day or two thereafter Altheimer took him to see the property on Lindell Boulevard referred to in the pleadings. The negotiations then entered upon resulted, on October 13, 1920, in a written contract for the exchange of the properties. During the negotiations plaintiff, according to his testimony, was told by Altheimer that the owner of the Lindell

Boulevard property was a very wealthy man, but Altheimer did not at that time disclose the owner's name. Later, when plaintiff was preparing the written contract of exchange, he called Altheimer over the phone and asked the name of the owner of the Lindell Boulevard property so. that he might insert it in the contract and was told by Altheimer that one Russell T. Padfield was the owner.

The written contract provided that Padfield should convey to plaintiff, or to whomsoever he might in writing direct, the Lindell Boulevard property, subject to existing incumbrances aggregating $41,000, and that plaintiff should convey or cause to be conveyed the Easton and Semple Avenues property to Padfield, or to whomsoever he might in writing direct, subject to two deeds of trust: the first securing an indebtedness of $16,500 and the second the sum of $15,500, and pay to Padfield the sum of $6000 in cash.

While the written contract provided that plaintiff's property should be conveyed subject to two deeds of trust, it was in fact incumbered with but one, one for $16,500. So in connection with the written contract the parties entered into a contemporaneous oral agreement which provided for the manner in which the written one should be carried out. The Lindell Boulevard property was valued at $60,000; the deduction of existing incumbrances of $41,000 left a net value of $19,000. Plaintiff's property was valued at $45,000; its incumbrance was $16,500, leaving the value of the equity at $28,500. The net value of plaintiff's property therefore exceeded that of the Lindell Boulevard property by $9500. It was agreed that plaintiff should pay to the owner of the Lindell Boulevard property $6000 in cash and take a second deed of trust back on the property he was conveying to secure both the $6000 and the $9500 representing the difference in values. These two sums were to constitute the second mortgage indebtedness of $15,500 provided for in the written contract.

All of the negotiations between plaintiff and the owner of the Lindell Boulevard property were had through Altheimer. Plaintiff never saw nor came in contact with the other party to the contract either during its negotiation or at the time of its final consummation when the deeds it called for were exchanged.

After plaintiff prepared the written contract of exchange he signed it and gave it to Altheimer. On the next day it was returned to him with the name, Russell T. Padfield, subscribed to it. There also appeared on the document a separate stipulation over the purported signature of Padfield, whereby he agreed to pay Altheimer a commission for negotiating the exchange. This was the first intimation that plaintiff had that Altheimer was representing as agent the other party to the transaction, and he thereupon announced to Al-

theimer that on account of such dual agency, which had been unknown to him, he would proceed no further in the matter of making the exchange. After two or three days, however, he concluded to go on with the trade, being pursuaded thereto by Altheimer. He testified that after his suspicions had been aroused by the knowledge of Altheimer's dual agency he made specific inquiries of Altheimer as to Padfield's financial ability and was told by Altheimer that Padfield was a very rich man, amply able to pay not only the $15,500 which was to be secured by the second deed of trust, but, if necessary, the $16,500 first mortgage indebtedness as well, this regardless of the security afforded by the deeds of trust. He said that because of his reliance upon these representations he decided to go on with the deal. Thereafter, pursuant to the written and oral agreements, a deed from the record owner of the Lindell Boulevard property, conveying the property subject to specific incumbrances aggregating $41,000, was delivered to plaintiff through Altheimer, and plaintiff turned over to Altheimer for delivery a deed conveying the Easton and Semple Avenues property to Russell T. Padfield. Plaintiff at the same time paid to Altheimer for Padfield $6000 in cash, and received from Altheimer a deed of trust on the Easton and Semple Avenues property purporting to secure notes in the aggregate sum of $15,500; the deed of trust and notes were signed by Padfield and the deed recited that it was subject to a prior deed of trust for $16,500.

In December following the transaction just noted a default under the first deed of trust on the Easton and Semple Avenues property occurred on account of the non-payment of interest. A foreclosure followed, the property selling at the foreclosure sale for $20,000. The excess of the proceeds over the amount required to satisfy the indebtedness secured by the deed of trust was applied on the second deed of trust notes held by plaintiff. After this application and the application of rents which plaintiff had collected under a provision of the second deed of trust there remained owing on the notes last referred to the sum of $13,914.22.

After the foreclosure, in January, 1921, plaintiff learned for the first time, so he said, that defendant Leahy was the real party in interest with whom he had made an exchange of properties; that Padfield was the driver of a milk wagon and wholly insolvent. Both Leahy and Padfield refused to pay anything further on the notes signed by Padfield.

Altheimer, testifying for defendant, denied that he had told plaintiff that Padfield was the real owner of the Lindell property; that on the contrary he told him early in the negotiations that Padfield was merely a "straw man" for Leahy. He also denied that he made to

plaintiff any representations whatever with reference to the solvency or financial standing or rating of Padfield or the owner of the Lindell Boulevard property.

Defendant Leahy testified that at the time of the negotiations with plaintiff he was the owner of the Lindell Boulevard property, but carried the record title in the name of one Slawson; that he himself directed the negotiations which were carried on through Altheimer; that Padfield was not his agent, and had no interest whatever in the subject-matter of the negotiations; that he carried on the transactions in Padfield's name with Padfield's consent; that he signed Padfield's name to the written contract for the exchange of the properties; and that at his direction Padfield in person signed the deed of trust and notes for $15,500 given to plaintiff. He further testified that he never said anything to Altheimer with reference to the financial standing or rating of Russell T. Padfield.

The cause was tried to a jury which returned a verdict in favor of plaintiff in the sum of $15,861.66, the balance remaining unpaid on the notes aggregating $15,500 and interest thereon at the rate of six per cent per annum from the 22nd day of October, 1920. Judgment was rendered accordingly and this appeal followed.

The refusal of the trial court to give an instruction in the nature of a demurrer to the evidence asked by the defendant is assigned as error.

I. From the petition as a whole it is clear that the cause of action attempted to be pleaded is one based on fraud and deceit. Notwithstanding many averments of a descriptive or historical character, the pleading in substance charges that plaintiff suffered damages through reliance upon false and fraudulent representations made to him, for the purpose of deceiving him, by the defendant. And those charges concretely put made up the issues, the sole issues, submitted to the jury under the single instruction asked by the plaintiff. Now the false representations alleged to constitute the fraud were all made by Altheimer, the agent of both plaintiff and defendant, if by any one. Defendant was not present when they were made; there was no showing that he authorized or directed Altheimer to make them or knew that he made them; nor was there a particle of evidence that he acted in collusion with Altheimer, or conspired with him, for the purpose of misleading plaintiff as to Padfield's solvency. The statements, if any, made by Altheimer to plaintiff were therefore mere hearsay and in no wise binding upon defendant.

"Where two or more principals employ the same agent, whether as a means of dealing with one another or to protect their common

interests, one cannot charge the other not actually at fault with the misconduct of the common agent. The latter owes no more duty to one than to the other; each of the principals is under an equal duty to supervise the agent and to protect his own interest, and there is no reason why the misconduct of the agent should be imputed to one principal rather than to the other.'' [2 Mechem on Agency (2 Ed.) sec. 2140. See, also, Austin v. Rupe, 141 S. W. 547; Ringer v. Wilkin, 183 Pac. 988, 989; Walker, Real Estate Agency (2 Ed.) 300; Brown v. St. John Trust Co., 71 Kan. 134; Blair v. Baird, 43 Tex. Civ. App. 134; Smith v. Farrell, 66 Mo. App. 8; Bank of New Milford v. Town of New Milford, 36 Conn. 93.]

If the action is one for fraud and deceit, it is manifest that plaintiff failed in his proof to make a case for the jury.

II. Respondents, abandoning apparently the theory upon which the suit was brought and tried below, take the position that defendant, having obtained plaintiff's money and property through and by means of the contract made in Padfield's name, is in equity and good conscience bound to repay the money and pay the contract price for the property. And under this new theory they insist that the allegations of the petition with respect to fraud may be treated as surplusage and the evidence offered in support thereof wholly disregarded and the petition and proof will be sufficient notwithstanding to support the judgment *nisi,* and that for that reason the judgment can and ought to be affirmed.

Plaintiff and defendant Leahy were the parties to the original contract for the exchange of their respective properties. Padfield was not defendant's agent; the defendant merely contracted in his name, as he had a right to do. [State ex rel. v. Cox, 1 S. W. (2d) 787, 789; Scanlan v. Grimmer, 71 Minn. 351.] That contract has been completely executed on both sides. Notwithstanding, defendant's undertaking thereunder should be looked to in determining whether the law now imposes upon him an obligation to pay the balance remaining unpaid on the mortgage notes signed by Padfield.

The original contract was in two parts, one written and the other oral. They were entered into contemporaneously—the oral one merely providing the manner in which the written one was to be performed. The oral agreement must therefore be so construed, if possible, as to be in harmony with the written one; it cannot be allowed to contradict or vary the terms of the one evidenced by the writing. [10 R. C. L. 1037.] The written contract provided that, in consideration of the conveyance to be made to him by defendant, plaintiff should convey his premises to defendant, *or to whomsoever he might direct,* subject to a deed of trust securing an indebtedness

of \$16,500 and "also subject to a second deed of trust in the sum of \$15,500," and pay the defendant the sum of \$6000 in cash. Now there was but one deed of trust then on the premises, the one for \$16,500, and it is manifest that the simplest and most obvious way for plaintiff to have performed his undertaking would have been for him to have obtained from a third party a second loan of \$15,500 on his property, paying the defendants \$6000 out of the proceeds and retaining for himself the balance of \$9500, and then conveyed the property to defendant "subject" to both incumbrances. Had plaintiff performed his contract in this manner it is clear that defendant would have incurred no personal liability for the indebtedness against the property. But it is evident that the margin of value was so narrow that plaintiff could not have procured from a third party a second loan on the property for \$16,500. The parties therefore agreed orally that plaintiff would himself take back a second deed of trust for that amount from the person to whom he conveyed the premises. As already stated the oral contract had only to do with the manner of carrying out the written one; the latter was paramount. And from its provisions it is entirely clear that it was not within the contemplation of the parties that defendant should assume any personal liability for the payment of the incumbrances on the property he was receiving; that on the contrary plaintiff, notwithstanding the method adopted for carrying the contract into execution, would look solely to the security afforded by the property itself for the payment of the \$15,500.

There is another view of the matter. Plaintiff knew that Padfield was financially irresponsible, that he was a "straw man." We say he knew it because his agent, Altheimer, knew it. [Smith v. Farrell, supra; Ringer v. Wilkin, supra.] Notwithstanding, he conveyed the premises to Padfield and accepted Padfield's obligation to pay him \$15,500, evidenced by a deed of trust and notes, as and for a complete performance of the contract on the part of the defendant. Having received for his money and property the precise consideration for which he contracted, no duty on the part of the defendant to further compensate him therefor can arise as an implication of law.

The judgment of the circuit court is reversed. All concur.