**BILLINGS MUTUAL INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**CAMERON MUTUAL INSURANCE COMPANY, Defendant–Respondent.**

No. 27952.

Missouri Court of Appeals,
Southern District,
Division Two.

May 9, 2007.

Rehearing Denied May 31, 2007.

Application for Transfer Denied
Aug. 21, 2007.

John G. Schultz, Franke, Schultz & Mullen, P.C., Kansas City, MO, for Appellant.

Ben K. Upp, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, MO, for Respondent.

GARY W. LYNCH, Judge.

Billings Mutual Insurance Company ("Billings") appeals the trial court judgment denying its indemnification coverage claim against Cameron Mutual Insurance Company ("Cameron") under a special business owner's insurance policy arising from a defamation claim by Henry Overcast against Billings. Finding that Billings gave Cameron late notice of the Overcast claim, which prejudiced Cameron, we affirm.

## 1) Factual and Procedural Background

The facts as found by the trial court, which are not challenged on appeal by Billings, are as follows. Billings issued an insurance policy insuring Overcast's home against loss by fire. After investigating Overcast's claim of a covered fire loss, Billings mailed a letter to Overcast on July 1, 1997, denying coverage under its policy because the loss resulted from an intentional act committed by Overcast or at his direction. Following receipt, Overcast asserted that the denial letter was false and defamed him. Before filing suit, Overcast offered to settle both the policy claim and the defamation claim for a total payment of $65,000, but Billings took no action on this offer. Overcast sued Billings in September of 1997, claiming damages for breach of the insurance policy for the fire loss and for defamation for the statements made by Billings in the denial letter.

In April of 1998, verdicts were rendered in Overcast's favor and against Billings in the amount of $26,900 on the insurance policy claim and in the amounts of $500,000 in actual damages and $400,000 in punitive damages on the defamation claim. Judgment in accordance with these verdicts was entered on May 1, 1998. Billings appealed the judgment, and after an opinion by this Court, the Supreme Court of Missouri granted transfer. While the case was pending before the Missouri Supreme Court, Overcast offered to settle both claims for a total payment of $150,000. Billings declined this offer. On February 8, 2000, our Supreme Court affirmed the trial court's judgment. *See Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62 (Mo. banc 2000).

Seven months later, in September of 2000, Billings sent a demand letter to Cameron asserting an indemnification claim for the Overcast defamation judgment in the amount of the $500,000 policy limits under the provisions of a special business owner's insurance policy ("Policy") issued by Cameron to Billings. Cameron denied coverage on July 25, 2001, and, consequently, Billings filed the instant suit for breach of contract. Cameron asserted in its answer, among other defenses, that: (1) coverage under the Policy was excluded by the professional-pursuits exclusion contained in the Policy; and (2) Billings failed to comply with the notice provisions under the Policy, in that Billings did not notify or provide written notice to Cameron of the Overcast matter as soon as practicable.[1]

---

1. Under section E(2) of the Policy labeled "Duties in the Event of Occurrence, Claim or

The Policy was originally sold to Billings sometime before 1997 by Dallas Wayne Eustler, a Cameron agent, and was in full force and effect at all relevant times at issue. Gayle Cobb served as Billings' general manager and secretary at all relevant times until January of 1998. Charles Smith succeeded Cobb in those positions in January of 1998 and served in those capacities at all relevant times thereafter. Also, at all relevant times, Eustler, Cobb, and Smith served as members of Billings' board of directors. None of the three, nor the Billings' board of directors, nor anyone else from Billings took any overt action to notify Cameron of the Overcast occurrence, claim, or suit before the demand letter in September of 2000.

Due to the late notice, Cameron did not have the opportunity to conduct further investigation into the facts of the Overcast claim, did not have the opportunity to review expert reports or employ additional or different experts, did not have the opportunity to employ counsel of its choosing or to determine if additional counsel should be employed, and was denied the opportunity to participate in settlement negotiations.

Although the trial court made no specific finding of such, the evidence was undisputed and uncontroverted that during all relevant times Cobb also served as a member of Cameron's board of directors.

The trial court entered judgment in favor of Cameron and found that Billings was not entitled to recover indemnification from Cameron based on: (1) the professional-services exclusion of the Policy; and (2) Billings' failure to comply with the

notice conditions of the Policy, which prejudiced Cameron. Billings raises two points on appeal: (1) The trial court erred in excluding coverage under the professional-services exclusion of the Policy; and (2) the trial court erred in finding that Billings failed to comply with the notice provisions of the Policy and that this failure prejudiced Cameron. Because our decision on Billings' second point is adverse to Billings and disposes of the appeal, we do not address the first point.

### 2) Standard of Review

■ In a court-tried case, we affirm the trial court judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976); *Knipp v. Truck Ins. Exchange*, 857 S.W.2d 281, 284 (Mo.App. 1993). We defer to the trial court's factual findings, giving due regard to the trial court's opportunity to judge the credibility of witnesses. *Peet v. Randolph*, 157 S.W.3d 360, 363 (Mo.App.2005). We review the evidence and reasonable inferences in the light most favorable to the judgment, disregarding contrary evidence and inferences. *Consumer Fin. Corp. v. Reams*, 158 S.W.3d 792, 795 (Mo.App. 2005). With respect to resolution of contractual ambiguities, we are faced with a question of law, and our review is *de novo*. *Alea London Ltd. v. Bono–Soltysiak Enterprises*, 186 S.W.3d 403, 410 (Mo.App. 2006).

---

Suit," Billings was required to notify Cameron of an occurrence which may result in a claim as soon as practicable. Additionally, if a claim or suit was brought against Billings, Billings was required to immediately record the specifics of the claim and the date received, and notify Cameron as soon as practi-

cable. Billings was required to "see to it" that Cameron received written notice of a claim or suit as soon as practicable. Additionally, Billings was required to immediately send copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.

### 3) Discussion

 Billings claims that the trial court erred in its finding that Billings failed to provide timely notice and that Cameron was thereby prejudiced. Missouri treats the failure of an insured to provide timely notice as an affirmative defense. *Weaver v. State Farm Mut. Auto. Ins. Co.,* 936 S.W.2d 818, 821 (Mo. banc 1997). When an insurer attempts to deny an insured coverage based on the insured's failure to comply with the notice provisions of the policy, the insurer must show that it was prejudiced by that failure. *Id.* Before reaching the notice issue, however, we must address two preliminary issues raised by Billings.

### a) Billings' Affirmative Avoidances of Waiver and Estoppel

 Initially, Billings argues that Cameron's failure to assert the affirmative defense of late notice until eleven months after Cameron was notified of the claim by the demand letter in September of 2000, constituted a waiver of the defense, and Cameron should be estopped from asserting it now. Cameron properly pleaded the affirmative defense of late notice in its answer to the petition. Rule 55.01.[2] Rule 55.01 also requires that a "defense consisting of an affirmative avoidance to any matter alleged in a preceding pleading must be pleaded." Thus, once Cameron pleaded the late-notice affirmative defense in its answer, Billings was required to file a reply to that answer if it intended to seek an affirmative avoidance to Cameron's affirmative defense. Rule 55.01; *Warren v. Paragon Techs. Group, Inc.,* 950 S.W.2d 844, 845 (Mo. banc 1997). "A reply should be filed when a plaintiff desires to avoid or

attack new and affirmative matter alleged in the answer." *Id.* (citation omitted). An avoidance is an affirmative defense to an affirmative defense. *Id.* Billings did not file a reply to Cameron's answer.

Both waiver and estoppel are affirmative defenses. Rule 55.08. As such, they constitute affirmative avoidances as contemplated by Rule 55.01. *Warren,* 950 S.W.2d at 845. Thus, Billings' failure to file a reply waived the affirmative avoidances of waiver and estoppel unless either (1) the trial court permitted the pleadings to be amended to include the defense, which it did not, or (2) the issue was tried by implied or actual consent of the parties. *See* Rule 55.33; *Tindall v. Holder,* 892 S.W.2d 314, 328 (Mo.App.1994); *Angoff v. Mersman,* 917 S.W.2d 207, 211 (Mo.App. 1996). As to the latter exception, Cameron timely objected, asserting Billings' failure to file a reply raising these avoidances, both when Billings asserted the avoidances in arguing the motions for summary judgment, and when Billings attempted to offer evidence on the avoidances at trial. Such timely objections support that Cameron did not consent to the trial of these avoidances and did not waive Billings' obligation to file a reply asserting the avoidances, as required by Rule 55.01. Having failed to file and raise them in a reply to Cameron's answer, Billings waived the affirmative avoidances of estoppel and waiver as to Cameron's affirmative defense of late notice. Rule 55.01; *Angoff,* 917 S.W.2d at 211.

### b) Alleged Ambiguity in Notice Provisions

 Billings next claims that the notice provisions of the Policy in section E(2)[3]

---

**2.** All references to rules are to Missouri Court Rules 2006, unless otherwise provided.

**3.** Section E(2) of the policy in its entirety provides:

 **2. Duties in The Event Of Occurrence, Claim or Suit**

and the "no-action clause" in section E(4)[4] are ambiguous, and as such, should be construed against Cameron. Section E(2) of the Policy states, in part, that "[y]ou must see to it that we are notified as soon as practicable of an occurrence or offense that may result in a claim." Section E(4) states, in part, that "[a] person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial[.]" Billings argues that these two sections create an ambiguity "because [E(4)] allows an insured to sue Cameron after an actual trial, while [E(2)(b)(2)] requires the insured to notify Cameron 'as soon as practicable.'" As best we can glean from Billings' brief, this perceived ambiguity is premised upon two assumptions. First, Billings assumes that: " 'As soon as Practicable' is not further defined in the policy and therefore is susceptible to different interpretations." Second, Billings assumes that: "Section [E (2)] does not provide that coverage is excluded to the insured if the insured does not meet the conditions set forth in that provision." Thus, Billings argues that sections E(2) and E(4) "create ambiguity in the policy as to what Billings' reporting duties are in the event of a suit against it." The only flaws in Billings' argument are that both assumptions upon which it is premised are flawed.

While it is true that "as soon as practicable" is not further defined in the Policy, it does not necessarily follow that it is susceptible to different interpretations.

Where policy notice clauses require the insured to notify the insurer of an occurrence "immediately" or "as soon as practicable," Missouri courts have uniformly

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

1) How, when and where the "occurrence" or offense took place;

2) The names and addresses of any injured persons and witnesses; and

3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

1) Immediately record the specifics of the claim or "suit" and the date received; and

2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

2) Authorize us to obtain records or other information;

3) Cooperate with us in the investigation, settlement or defense of the claim or "suit;" and

4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

4. Section E(4) of the policy in its entirety provides:

**4. Legal Action Against Us**
No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

held that such language will be construed to mean "within a reasonable period of time." *Scott v. Club Exchange Corp.*, 560 S.W.2d 289, 295–96 (Mo.App. 1977); *Cockrell v. Farmers Mutual Automobile Ins. Co.*, 427 S.W.2d 303, 308 (Mo.App.1968); *United States v. Conservation Chemical Co.*, 653 F.Supp. 152, 228 (W.D.Mo.1986).

*Tresner v. State Farm Ins. Co.*, 913 S.W.2d 7, 10 n. 2 (Mo. banc 1995).

Likewise, regarding Billings' second assumption, just because section E(2) does not explicitly "provide that coverage is excluded to the insured if the insured does not meet the conditions set forth in that provision[,]" that does not preclude the possibility that coverage may be excluded for such failure to comply with section E(2) by a provision elsewhere in the policy. Just such a provision is found in section E(4)(b), which provides, in part: "No person or organization has a right under this policy ... [t]o sue us on this policy unless all of its terms have been fully complied with." Billings, as an organization, is subject to the condition precedent to suit mandated by this provision. The notice requirements in section E(2) are terms of the Policy and are, therefore, included in the reference to "all of its terms." Thus, section E(4)(b) denies Billings the right to sue Cameron for coverage under the Policy unless Billings complied with the notice requirements of section E(2).

■ Because both of the assumptions underlying Billings' ambiguity argument fail to support it, we conclude that the ambiguity argument is without merit. Billings has failed to demonstrate any ambiguity between the provisions of sections E(2) and E(4) of the Policy. We are not permitted to, and we will not create an ambiguity in order to distort the language of an unambiguous policy. *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. banc 1999).

### c) Late Notice of Claim

■ The Policy required Billings to give Cameron notice of any occurrence that might result in a claim and to send copies of suit papers immediately to Cameron. Such conditions are valid and enforceable under Missouri law. *Greer v. Zurich Ins. Co.*, 441 S.W.2d 15, 30 (Mo. 1969). As the insured, Billings bears the burden of proof in showing compliance with these conditions. *Johnston v. Sweany*, 68 S.W.3d 398, 401 (Mo.2002). The trial court found that Billings failed to comply with the Policy's notice provisions, in that the first notice Billings gave to Cameron of the Overcast claim was not until the demand letter in September of 2000, a full three years after the Overcast occurrence, claim, and filing of suit.

■ Billings contends that the trial court's finding was in error as a misapplication of the law because Cameron had both actual and constructive, timely notice of the Overcast claim. In support of this contention, Billings argues that Cobb's knowledge of the Overcast matter acquired in his capacities as general manager and secretary of Billings and as a member of the Billings' Board of Directors is, as a matter of law, imputed to Cameron as actual or constructive notice of the Overcast claim because of Cobb's concurrent position as a member of Cameron's board of directors.[5] The resolution of this issue requires that it be divided into and dis-

---

**5.** We note that in the argument portion of its brief, Billings also contends that Eustler's knowledge and notice as a member of Billings' Board of Directors should be imputed to Cameron because Eustler was also a Cameron sales agent. However, Billings did not raise this claim of error in his point relied on. As such, Billings has waived this issue. Rule 84.04(e); *Cordes v. Williams*, 201 S.W.3d 122, 131 (Mo.App.2006).

cussed in two parts: (1) whether Cobb's knowledge is imputed to Cameron because it was within Cobb's particular scope of authority as a director for Cameron to receive and report such notice; and (2) whether Cobb's knowledge is imputed to Cameron based on a duty of disclosure owed by Cobb as a director to Cameron.

### i) Cobb's scope of authority as a Cameron director.

An insurance company, as an artificial legal person, can have no knowledge of any facts except for the knowledge of its various officers and agents that is imputed to it. *Jenkad Enters., Inc. v. Transp. Ins. Co.,* 18 S.W.3d 34, 37–8 (Mo. App.2000). In order for an agent's knowledge of a matter to be imputed to a corporation, the matter must be one that is within the agent's scope of authority and employment. *Packard Mfg. Co. v. Indiana Lumbermens Mut. Ins. Co.,* 356 Mo. 687, 203 S.W.2d 415, 421 (banc 1947).

As a member of Cameron's board of directors, Cobb occupied a fiduciary relation to Cameron and its shareholders. *Ramacciotti v. Joe Simpkins, Inc.,* 427 S.W.2d 425, 431 (Mo.1968). At least one Missouri court has held that directors of corporations are agents of the corporation. *State ex rel. Moore v. State Bank of Hallsville,* 561 S.W.2d 722, 724 (Mo.App.1978). However, most cases have not expressly designated or described directors as agents of the corporation, but rather, consider the relationship of the director to the corporation in terms of the fiduciary duty owed by a director to the corporation. *See Gieselmann v. Stegeman,* 443 S.W.2d 127 (Mo.1969); *Forinash v. Daugherty,* 697 S.W.2d 294 (Mo.App.1985). Nevertheless, "[t]he corporate ... director's fiduciary duty to the corporation is governed by the same rules that apply to ... agents."

*Zakibe v. Ahrens & McCarron, Inc.,* 28 S.W.3d 373, 385 (Mo.App.2000).

The board of directors acts as the governing board of a company, and in the sense of the control they exercise over corporate affairs, they are the corporation. *Saigh ex rel. Anheuser–Busch, Inc. v. Busch,* 396 S.W.2d 9, 15 (Mo.App.1965); *Federal Land Bank of St. Louis v. Bross,* 122 S.W.2d 35, 39 (Mo.App.1938). However, it should be noted that this authority lies with the board as a whole, and not with individual members. *Fair Mercantile Co. v. Union–May–Stern Co.,* 359 Mo. 385, 221 S.W.2d 751, 753–54 (1949). Additionally, a director has no authority to act individually for a corporation as its agent unless such authority has been specifically conferred. *Stevens Davis Co. v. Sid's Petroleum Corp.,* 157 S.W.2d 246, 248 (Mo. App.1942).

In order for an agent's knowledge to be imputed to a corporation, the knowledge must be within the agent's scope of authority. *Packard Mfg. Co.,* 203 S.W.2d at 421; *Southwest Bank of Polk County v. Hughes,* 883 S.W.2d 518, 522 (Mo.App.1994). Billings has failed to cite any relevant legal authority indicating that a director's knowledge of a potential claim should be imputed to the director's company based merely upon his position as a director of the company. Nor has Billings pointed to anything in the record indicating that it is normally within a director's scope of authority to receive and report potential claims under insurance policies issued by the director's company. Additionally, there is no evidence in the record that Cameron authorized or otherwise agreed that any of its directors, or specifically Cobb, could act on its behalf in receiving and reporting claims under policies issued by Cameron. Absent a specific agreement, a director has no authority to act individually for a corporation as its

agent. *Stevens Davis Co.*, 157 S.W.2d at 248. For these reasons, we find that it was not within Cobb's scope of authority as a Cameron director to receive or report the Overcast claim to Cameron. As such the knowledge of the Overcast claim that Cobb acquired in his positions as general manager, secretary, and director of Billings is not imputed to Cameron.

### ii) Cobb's fiduciary duty to Cameron

■ Missouri has long held that a certain duty to disclose information is inherent in a director's duty of loyalty. *Frankford Exchange Bank v. McCune*, 72 S.W.2d 155, 158 (Mo.App.1934). As was held in *Zakibe*, "if a corporation contracts with or engages in a transaction with an officer or director ... in order to avoid the conflict of interest otherwise created by self-dealing, that officer or director must disclose all material facts relating to that relationship or interest and the transaction." 28 S.W.3d at 384. But this duty to disclose is not a general, all-encompassing duty to disclose any and all information the director knows that may or may not affect the corporation. Rather, the disclosure cases in Missouri have implicated circumstances where a director had a self interest in a transaction. *See Ramacciotti, supra; Zakibe, supra; Simpson v. Spellman*, 522 S.W.2d 615 (Mo.App.1975). Billings has not directed our attention to anything in the record supporting that Cobb had a personal, self interest in the Overcast occurrence, claim or suit.

■ However, we need not decide the ultimate issue of Cobb's duty to disclose to Cameron because, even if we were to so find, it would be of no avail to Billings because in that situation, Cobb would be a dual agent.[6] A dual agency arises when "two or more principals employ the same agent, whether as a means of dealing with one another or to protect their common interests." *Weems v. Montgomery*, 126 S.W.3d 479, 486 (Mo.App.2004) (internal citations omitted).

■ Cobb, in his position of general manager and secretary of Billings, was an agent of Billings. *Molasky Enters., Inc. v. Carps, Inc.*, 615 S.W.2d 83, 87, (Mo.App. 1981) (holding officers of corporation are its agents). Billings' bylaws state that the secretary "shall have general charge and management of the affairs of the Company[.]" As the general manager of Billings, Cobb owed a duty to Billings to notify Cameron of the Overcast claim. Cobb's failure to notify Cameron constituted misconduct to Billings under his position as general manager and secretary. If Cobb had a fiduciary duty to disclose his knowledge of the Overcast claim to Cameron, an issue we do not decide, then his failure to do so constitutes misconduct to Cameron. In regard to the misconduct of dual agents, our Supreme Court has held that, "where two or more principals employ the same agent, the misconduct of the agent cannot be imputed to any one of the principals who is not actually at fault, since each of the principals is under an equal duty to supervise the agent, and protect his own interest." *Fuchs v. Leahy*, 321 Mo. 47, 9 S.W.2d 897, 900 (1928) (citation omitted). Because there is no evidence that Cameron was at fault for Cobb's misconduct, Cobb's knowledge is not imputed to Cameron. *Id.*

The trial court concluded that Billings failed to comply with the notice provisions under the Policy when Billings did not notify Cameron of the Overcast matter

6. Cameron raised this argument and its supporting authority in its respondent's brief. Billings filed a reply brief, but chose not to respond in any manner to this argument or its legal authority.

until the demand letter in September of 2000. This conclusion is not in error, because as a matter of law and based upon the evidence presented in this case, the knowledge acquired by Cobb as a dual agent of Billings and Cameron, is not imputed to Cameron. *Id.*

### d) Prejudice Due to Late Notice

In Missouri, the purpose of notice provisions in insurance policies is to prevent prejudice to the insurer, not to "provide a technical escape hatch by which to deny coverage in the absence of prejudice[.]" *Weaver*, 936 S.W.2d at 820. A showing of untimely notice is not enough; the insurer must also prove that it was prejudiced by that late notice. *Id.* at 821. Missouri has long placed the burden of showing prejudice on the insurer. *Tresner*, 913 S.W.2d at 16. The prejudice requirement "stems from the reluctance of Missouri courts to excuse an insurer from its contractual obligations because of an insured's breach of a policy provision that does not prejudice the insured." *Id.* The presence or absence of prejudice is a fact-specific inquiry to be determined by the trier of fact. *Id.* at 16.

The Missouri case history analyzing this issue of an insurer's prejudice does not exactly reveal clear or consistent rules or applications. This is so because the question of prejudice is such a fact-specific inquiry with many variables and permutations, the resolution of which are unique to each case. These variables include, but are not limited to: (1) the type of insurance coverage involved (e.g., first-party coverage with no obligation by the insurer to provide the insured a defense compared to third-party coverage with such an obligation to defend); (2) the type of the late notice (e.g., failure to give timely notice of the occurrence giving rise to the claim, failure to give timely notice of the initial

claim, failure to give timely notice of the filing of the suit and forwarding copies of the suit papers, or combinations thereof); (3) the timing of the receipt of actual notice by the insurer (e.g., before a claim is made, before suit is filed, before trial, before a judgment is entered, and before a judgment becomes final); and (4) the relationship between the type of the late notice and the timing of the receipt of actual notice (e.g., failure to give timely notice of the occurrence with actual notice received prior to a claim being made compared to failure to give any notice of the occurrence, claim, or suit with actual notice being received after the judgment becomes final).

With these variables in mind, we find some guidance from prior cases with facts most similar to the instant case. Specifically, we will look to the cases where the insurer had a policy obligation and right to defend the underlying action and the insured did not provide any notice of the occurrence, claim, or suit, or forward a copy of the suit papers to the insurer until after the judgment rendered in the underlying lawsuit became final, or could not otherwise be contested.

In *Greer*, 441 S.W.2d at 15, the plaintiffs appealed from the trial court's denial of their action against the insurer for satisfaction of a judgment obtained by them for damages for personal injuries sustained in an automobile accident. The driver of the other vehicle involved in the accident was covered by a liability insurance policy issued by the insurer to a finance corporation named Commercial Credit Corporation ("Commercial Credit"). *Id.* at 20, 27–28. The vehicle had been sold to driver following its repossession by Commercial Credit, and thus fell under the extended coverage of an "omnibus clause" in the policy. *Id.*

However, the policy required the satisfaction of certain notice requirements as a

condition precedent to bringing an action against the insurer. *Id.* at 28. Notice of an accident had to be given by the insured to the insurer "as soon as practicable." *Id.* If a claim or lawsuit was brought against the insured, "every demand, notice, summons or other process received" by the insured had to be "immediately" forwarded to the insurer. *Id.* While Commercial Credit received notice from driver's counsel that a personal injury action was pending against him, Commercial Credit never forwarded that information on to insurer. *Id.* at 30. Insurer did not receive any notice of the accident or the lawsuit until five months after judgment had been rendered in the lawsuit. *Id.* at 32.

The Supreme Court considered prejudice to the insurer because of the delayed notice as one factor in its determination of whether notice was given and suit papers were forwarded "within a reasonable time and agreeable to policy conditions."[7] *Id.* The court cited to a long list of prior cases demonstrating that "prejudice substantially disabling the insurer in its defense" is a factor that should be considered. *Id.* The evidence produced to the trial court disclosed that the personal injury suit was not filed until almost two years following the accident, and in that time period no investigation into the accident's cause had been made, nor had any physical examination of the plaintiffs been performed on behalf of the defense. *Id.* Two witnesses, one of which was an attorney as an expert witness, testified on behalf of insurer, explaining that the insurer had no opportunity to perform their usual preliminary investigation of such cases, select trial counsel, or engage in settlement discussions. *Id.* Without any further exposition of the evi-

dence presented, the Court affirmed the trial court's finding that the insurer was prejudiced by reason of the delayed notice, because the evidence produced at trial supported that finding. *Id.* at 32–33.

The Western District of this court next considered the issue in *Anderson v. Slayton,* 662 S.W.2d 575 (Mo.App.1983), where the plaintiffs appealed from an order of the trial court discharging the insurer from garnishment of an automobile insurance policy issued to the insured judgment debtor. Plaintiffs had sued the insured for damages arising out of an automobile collision. *Id.* at 576. The insured was personally served, but made no appearance in the case, filed no answer, and gave no notice to the insurer of the lawsuit as required by the policy. *Id.* at 576–77. Plaintiffs ultimately obtained a default judgment against the insured. *Id.* at 576. The insured had notified the insurer of the accident, and the insurer had engaged in settlement negotiations with plaintiffs' attorney, but they were unsuccessful. *Id.* Thereafter, the insurer instructed the insured to notify the insurer if and when a summons was served, and to promptly forward to the insurer all suit papers. *Id.* The insured did not do as instructed, and the insurer received no actual knowledge of the lawsuit until after the default judgment had become final. *Id.*

Noting an absence of prior Missouri authority, the Court looked to other jurisdictions for guidance, finding "substantial authority supports the realistic view" that when the failure of the insured to forward suit papers to the insurer is unexcused and results in a default judgment, prejudice to the insurer is presumed. *Id.* at 577–78. The Court reasoned that "prejudice automatically follows from the denial to the

---

7. In accordance with precedent, the Supreme Court construed the policy terms "immediate" and "as soon as practicable" to mean "within a reasonable time." *Greer,* 441 S.W.2d at 30–31.

insurer of any opportunity to defend against the claim." *Id.* The Court affirmed the judgment of the trial court, holding that the insured "breached the policy cooperation condition and thereby forfeited coverage." *Id.* at 578.

This issue came before the Western District again in *Rocha v. Metro. Prop. & Cas. Ins. Co.*, 14 S.W.3d 242 (Mo.App.2000), in which the plaintiffs appealed from summary judgment entered in favor of the insurer on their garnishment action. Plaintiffs had obtained a judgment against the insured for damages for injuries sustained during a shooting at their home. *Id.* at 243. The insured, a minor, was covered by his parents' homeowner's policy with the insurer, and plaintiffs sought satisfaction of their judgment from that policy. *Id.* The trial court granted the insurer's motion for summary judgment on the basis that coverage was excluded by the policy's "intentional and criminal acts" exclusion, and plaintiffs appealed. *Id.* The Western District affirmed not on that basis, but on the basis that the insured failed to cooperate with the policy's notice provisions. *Id.* at 245.

The policy required the insured to "promptly notify" the insurer of any accidents or occurrences, and to "immediately" forward any related legal papers. *Id.* The insured did notify insurer of the lawsuit and the insurer began a defense, but then the insurer decided that the policy excluded coverage for the claim of conspiracy alleged in the petition and withdrew from the defense of that claim. *Id.* at 244. One year later, the plaintiffs filed an amended petition alleging a claim of negligence, and the insured did not notify the insurer of the amended petition with the new claim. *Id.* Without notice to the insurer, the insured engaged in settlement negotiations with the plaintiffs, and both parties agreed to limit recovery to the insurance contract.

*Id.* at 244, 246. The court entered judgment in accordance with that agreement. *Id.* at 244. The insurer did not learn of the amended petition until the plaintiffs filed their garnishment action against the insurer. *Id.*

In addressing the insurer's argument that it could deny coverage because the insured did not notify the insurer of the amended petition containing the negligence claim, the court first found that an insured has a right to review an amended petition setting out a new cause of action, and to reexamine its decision on whether to actively participate in a defense against that new claim. *Id.* at 247. The court went on to say:

One of the factors to be considered in determining whether there was a material breach of the contract is whether the failure to notify the insurer was likely to result in prejudice to the insurer. *Greer*, 441 S.W.2d at 32. In *Anderson v. Slayton*, 662 S.W.2d 575, 577–78 (Mo.App.1983), this court examined the issue of whether prejudice to the insurer can ordinarily be presumed from the failure of the insured to forward suit papers which denies the insurer the opportunity to defend. We held in *Anderson* that where there is an unexcused failure to forward suit papers to the insurer, prejudice will be presumed. *Id.* In such cases, the insurer will generally be disadvantaged in its capacity to compromise and settle the claim. Such a disadvantage is difficult to prove, and it would be unjust to force the insurer to demonstrate prejudice in such a case. *Id.* at 578. Accordingly, where the failure to provide notice is unexcused, prejudice will be presumed. [Insured] makes no argument, and we see no indication in this case, that the

presumption of prejudice can be overcome.

*Rocha,* 14 S.W.3d at 248.

Finding that the insured, through the failure to notify the insurer of the amended petition, denied the insurer an opportunity to defend against the new charges of negligence, the court affirmed the grant of summary judgment because the failure to notify was unexcused, and gave rise to the presumption that the insurer was prejudiced. *Id.*

Next, the Supreme Court had the opportunity to consider this issue again in *Johnston v. Sweany,* 68 S.W.3d 398 (Mo. banc 2002), where the plaintiffs appealed from summary judgment entered in favor of the insurer on their garnishment action. Plaintiffs had sued the insured for damages from a fire that occurred after the insured performed repair work on plaintiffs' home. *Id.* at 400. The insured signed a confession of judgment which limited execution on the judgment to any available insurance proceeds, and the trial court entered judgment in accordance with that confession. *Id.* The affidavits supporting the insurer's summary judgment motion evidenced that the insured never gave notice of the lawsuit to the insurer nor forwarded any of the related legal papers, as required by the insurance policy. *Id.* at 401–02. The insurer did not learn of the lawsuit until two years after the initial occurrence, when it received a copy of the confession of judgment along with a letter demanding payment. *Id.* at 402. This letter came about ten days before the trial court entered its final judgment, but after insured had entered into the confession of judgment. *Id.*

Although judgment had not yet been entered on plaintiffs' claims when the insurer learned of the lawsuit, the Supreme Court found that the insurer was neverthe-less prejudiced by insured's failure to provide notice of the lawsuit.

> [Insured]'s failure to notify [insurer] of the suit and forward all legal papers to [insurer], in addition to his failure to obtain [insurer's] consent before voluntarily assuming liability on behalf of all defendants, denied [insurer] the opportunity to protect its interests. Specifically, [insured's] failure to comply with these policy provisions denied [insurer] the opportunity to investigate the facts applicable to the subject of the lawsuit, to settle the dispute before trial, to defend against liability at trial, and to dispute the amount of damages.

*Id.*

The court affirmed the trial court's grant of summary judgment, finding that plaintiffs' response to the insurer's summary judgment motion did not sufficiently contradict the insurer's supporting affidavits, which evidenced that the insured failed to comply with the policy provisions and resulted in prejudice to the insurer. *Id.* at 402–03.

Finally, the Eighth Circuit Court of Appeals applied Missouri law to this issue in *Interstate Cleaning Corp. v. Commercial Underwriters Ins.,* 325 F.3d 1024 (8th Cir. 2003), where the insured appealed from the district court's entry of summary judgment in favor of the insurer on the insured's breach of contract claim. The insured had been sued by an employee for sexual harassment. *Id.* at 1026–27. Before trial, the insured rejected a settlement offer from the employee. *Id.* at 1029. Following a jury trial, judgment was entered in favor of the employee. *Id.* at 1026–27. While an appeal of that judgment was pending, the insured and the employee agreed to a settlement of the claim. *Id.* at 1027. The insured carried a general commercial liability insurance policy with the insurer, and notified the insur-

er of the lawsuit about one month after the jury trial. *Id.* The insurer refused to defend or indemnify the insured. *Id.* One year later, the insured brought the underlying breach of contract claim against the insurer. *Id.* On cross motions for summary judgment, the district court ruled in favor of the insurer, holding that the insured failed to provide the insurer with timely notice as required by the policy, and the insurer suffered prejudice as a result. *Id.*

On appeal from the district court's judgment, the Eighth Circuit analyzed whether the insured had substantially complied with the policy's notice provision, such that its failure to give timely notice would be excused. *Id.* at 1028–29. The court applied the rule from *Tresner*, 913 S.W.2d at 15, that in order to determine whether an insured substantially complied with a notice provision, prejudice to the insurer as a result of the delayed notice must be considered. *Interstate Cleaning Corp.*, 325 F.3d at 1029. The court also applied the rule recited in *Tresner*, that the issue of prejudice may become a question of law if all reasonable persons would conclude the insured did not provide notice in a reasonable time. *Id.* The court reasoned:

> [Insured] failed to notify [insurer] of the [employee]'s lawsuit until after [insured] defended the [employee]'s action, and rejected settlement before trial ..., and until after the jury had rendered a verdict. Like in Johnston, this tardiness deprived [insurer] of the opportunity to investigate facts, to defend on liability, to settle the lawsuit, and to choose a trial strategy. By the time [insured] notified [insurer] of the [employee]'s claims, [insurer] had already been prejudiced. The jury had already found [insured] liable and established a value for the [employee]'s claims. The district court was correct, [insured] failed to provide timely notice as required by the

Policy, and [insurer] suffered prejudice from the delay.

*Id.* Accordingly, the court affirmed the district court's entry of summary judgment. *Id.* at 1030.

██ The preceding cases reveal three different ways to analyze the issue of prejudice to the insurer resulting from notice given after a judgment has become final or the claim is no longer contestable. First, both *Anderson* and *Rocha* apply a presumption of prejudice whenever the failure to forward the suit papers by the insured is unexcused. Second, *Interstate Cleaning Corp.*, which cites to *Tresner*, transforms the prejudice issue from a question of fact into a question of law when all reasonable minds would agree that notice was not given within a reasonable time. Third, *Greer* and *Johnston* place the burden upon the insurer to show evidence of actual prejudice resulting from the delayed notice. However, evidence that the insurer was substantially disabled in its defense of the underlying claim and evidence that the insurer was denied the opportunity to protect its interests satisfies this burden. *Greer*, 441 S.W.2d at 32; *Johnston*, 68 S.W.3d at 402. In the present case, no matter which of the three tests is applied, it is apparent Cameron suffered prejudice as a result of Billings' delayed notice.

First, the trial court specifically found in this case that Billings had no excuse for its failure to forward the Overcast suit papers to Cameron. The presumption of prejudice from *Rocha* and *Anderson* was considered by the trial court, was specifically mentioned in its conclusions of law, and was supported by its specific finding that: "Billings has offered no excuse for its failure to forward suit papers to Cameron." However, Billings chose to ignore and failed to mention or discuss this presumption in its initial brief. Not surprisingly,

Cameron asserted the presumption, the cases supporting it, and its application to the facts of this case in its respondent's brief. Billings, in its reply brief, once again chose not to address these cases or Cameron's asserted application of the presumption. Rather, totally ignoring it, Billings contends that "Cameron has not met its burden of proving that it was prejudiced by Billing's reporting of the claim." In support of this contention Billings alleges, without any reference to the record on appeal, that "Billings defended itself throughout the trial court proceeding as well as through the Missouri supreme court appeal and *no actions were taken by Billings which harmed or prejudiced Cameron.*" (Emphasis added.) This unsupported allegation and conclusion flies in the face of: (1) the investigation of the claim, from which Cameron was excluded; (2) the settlement negotiations, from which Cameron was excluded; (3) the selection of trial counsel, from which Cameron was excluded; (4) the selection of expert witnesses, from which Cameron was excluded; and (5) the selection of trial and appellate strategy, from which Cameron was excluded. Like the insurer in *Rocha,* Cameron was completely denied the opportunity to defend as a result of the delayed notice. *See Rocha,* 14 S.W.3d at 248. Billings does not make any argument that it rebutted the presumption of prejudice, nor do we see any indication or evidence that it has done so.

Second, given the timing of the late notice in this case, there is sufficient evidence of prejudice to Cameron so that the issue can be decided as a matter of law, in accordance with the analysis in *Interstate Cleaning Corp.* Just like the insurer in *Interstate Cleaning Corp.,* Cameron was not notified of the lawsuit until after the jury had rendered a verdict and found Billings liable. In fact, Cameron did not receive notice until after our Supreme Court rendered its decision affirming the trial court's judgment. "The primary underlying purpose of a notice requirement is to allow the insurer to assess and control the risk, and the failure of the insured to provide notice severely undercuts this purpose." 13 COUCH ON INSURANCE 3d § 193:68 (2005). Of all insureds, surely Billings, as an insurance company, appreciates, understands, and embraces the reasonableness of the purpose of the notice requirement. In return for its agreement to indemnify Billings, Cameron contracted for the right to timely notice so that it could do those things necessary to avoid or minimize liability, such as collecting evidence and negotiating. 13 COUCH ON INSURANCE 3d § 193:70 (2005). Likewise, Billings has a keen understanding and awareness of an insurer's reasonable need and desire for timely notice in order to avoid or minimize liability by collecting evidence and negotiating. While the Policy obligates Cameron to defend a claim against Billings, it follows that Cameron has a concurrent right to determine when and how to defend an action. *Dickman Aviation Services, Inc. v. U.S. Fire Ins. Co.,* 809 S.W.2d 149, 152 (Mo.App.1991). Once again, Billings has a unique vantage point from which to appreciate the reasonableness of the insurer's right to determine when and how to defend an action when it is obligated to provide a defense to an insured and the necessity for notice within a reasonable time period within which to exercise this right. Billings' failure to provide timely notice completely denied Cameron any opportunity to exercise its right to defend the action and to assess and control the risk and loss. Accordingly, all reasonable persons would conclude that notice was not given to Cameron within a reasonable time and that it was prejudiced as a result. *Interstate Cleaning Corp.,* 325 F.3d at 1029. Sustaining Billings' contrary position in the

context of this case would completely frustrate the purpose for the notice provisions contained in the Policy, would deny Cameron its policy right to defend the action and would defy reason.

 Third, Cameron offered substantial evidence of actual prejudice as circumscribed by *Greer* and *Johnston.* Cameron was not notified by Billings about the Overcast matter until three years after the occurrence, two and a half years after the jury verdict, and seven months after our Supreme Court's decision affirmed the judgment. This delay far surpasses the delay in *Greer,* where the insurer received notice of the lawsuit five months after the trial court's judgment, and the delay in Johnston, where the insurer received notice ten days before the trial court's judgment became final. *Greer,* 441 S.W.2d 15 at 32; *Johnston,* 68 S.W.3d at 402. The trial court in the case at bar made specific findings of fact that, as a result of the late notice, Cameron was denied an opportunity to investigate the underlying incident, to choose its own counsel, to participate in settlement discussions, and to formulate trial strategy, including the selection of expert witnesses. Billings does not challenge any of these specific findings as not being supported by substantial evidence or as being against the weight of the evidence.[8] Cameron, like the insurer in both *Greer* and *Johnston,* "was presented with a 'fait accompli.'" *Johnston,* 68 S.W.3d at 402. As such, Cameron's position at the

time it received notice is distinguishable from the multitude of cases discussing the evidence necessary to support the insurer's prejudice in the context where the insurer still had the opportunity to take some action to contest the underlying claim at the time it received notice. *See e.g., Tresner,* 913 S.W.2d 7 (notice received one and one-half months after the accident); *Pikey v. General Accident Ins. Co. of America,* 922 S.W.2d 777 (Mo.App.1996) (notice received two weeks after the accident); *Weaver,* 936 S.W.2d 818 (notice received one year after the accident on the day suit was filed); *Farm Bureau Town & Country Ins. Co. of Mo. v. Rogers,* 959 S.W.2d 880 (Mo.App.1997) (notice received five years after the accident but over three years before the underlying suit was filed); *Palmer v. Hawkeye Security Ins. Co.,* 1 S.W.3d 591 (Mo.App.1999) (notice received two months after entry of default judgment, but within time period within which the default judgment could have been set aside and insured failed to take any action, letting the default judgment become final); *Mountjoy v. Auto. Club Inter–Ins. Exchange,* 108 S.W.3d 710 (Mo.App.2003) (notice received three and one-half months after accident).

 Moreover, *Greer* was specifically cited by the trial court in its conclusions of law and by Cameron in its respondent's brief, yet Billings remained completely silent about *Greer* in both its initial and reply briefs.[9] We, evidently

---

8. In the argument portion of its brief, Billings claims the trial court erred in admitting into evidence the expert testimony of attorney James Newberry concerning Cameron's claimed prejudice. Billings failed to raise this claimed error in its point relied on. Because of this failure, Billings has waived this issue. Rule 84.04(e); *Cordes,* 201 S.W.3d at 131. We also note that when Cameron offered these portions of witness Newberry's deposition into evidence, Billings made no objection. "To preserve an alleged error in

admitting evidence for appellate review, a party must make a timely and valid objection and receive an adverse ruling thereon." *Swartz v. Gale Webb Transp. Co.,* 215 S.W.3d 127, 133 (Mo. banc 2007).

9. In its reply brief Billings raises for the first time on appeal the argument that Cameron was not prejudiced by the late notice because even if Billings had timely notified Cameron in 1997, Cameron would have denied coverage under the "professional services" exclu-

like Billings, are unable to distinguish the evidence supporting the insurer's actual prejudice found in *Greer* from the evidence in the instant case supporting the trial court's finding of actual prejudice to Cameron. Here, the evidence not only supports the trial court's finding that Cameron has proven it suffered prejudice substantially disabling it in its defense, as considered in *Greer*, but which, in addition completely denied Cameron the right and opportunity to defend as granted by the Policy.

Billings urges us to distinguish *Johnston* from the instant case "because the insured in *Johnston* entered into a consent judgment and did not defend itself, whereas here Billings defended itself to the highest court in the state." This purported distinction is without merit. The court in *Johnston* analyzed the confession of judgment in the context of denying the insurer "the opportunity to protect its interests." *Johnston*, 68 S.W.3d at 402. Billings' defense of the case, albeit to "the highest court in the state," operated to absolutely and completely deny Cameron the opportunity to protect its interests just a surely as the confession of judgment did so to the insurer in *Johnston*.

The trial court found that Billings failed to comply with the notice provisions of its Policy, and that Cameron was prejudiced by that failure. The evidence supports this finding, under any of the three tests discussed. Reviewing the evidence in the light most favorable to the trial court's judgment, as we must, we cannot say that a finding of prejudice was without substantial evidentiary support or against the weight of the evidence, or that the trial

court erroneously declared or applied the law.

Billings' second point is denied.

### Decision

Because the denial of Billing's second point is dispositive, we need not reach the issue of whether coverage was excluded by the professional-services exclusion in the Policy. The judgment of the trial court is affirmed.

BATES, P.J./C.J., and GARRISON, J., concur.

---

sion as it did in 2001. In that situation, Billings argues, it would have been required to act on its own and later sue Cameron for indemnification, just has it has done in the instant case. It is not appropriate for us to address this argument because, "[a]rguments

omitted from an appellant's initial brief may not be supplied by a reply brief because a respondent has no opportunity to address the argument." *Summer Chase Second Addition Subdivision Homeowners Ass'n v. Taylor–Morley, Inc.*, 146 S.W.3d 411, 418 (Mo.App.2004).