Jered M. **CURL**, Respondent,

v.

**BNSF RAILWAY CO.**, Appellant.

**WD 79591**

Missouri Court of Appeals, Western District.

Opinion filed: May 16, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 2017

---

Christopher H. Leach, Kansas City, for Respondent.

Booker Shaw, St. Louis, for Appellant.

Before Division Three: Anthony Rex Gabbert, Presiding Judge, Victor C. Howard, Judge and Cynthia L. Martin, Judge

## VICTOR C. HOWARD, JUDGE

BNSF Railway Company appeals the judgment on a jury verdict awarding Jered Curl damages in the amount of $4,300,000 on his negligence claim under the Federal Employers' Liability Act (FELA). BNSF raises four points on appeal challenging the trial court's refusal to permit it to assert a mitigation of damages defense. The judgment is affirmed.

### Background

On December 6, 2013, Mr. Curl filed a petition against BNSF seeking damages under FELA for injuries he alleged he sustained on July 12, 2012, while working

for BNSF on a maintenance of way rail-gang RP17 as an operator of a Rail Heater machine. Mr. Curl alleged that the gang was moving four machines—a Boxer, the Rail Heater operated by Mr. Curl, a Spiker machine, and a Crane—in a single file caravan down the track when Mr. Curl's Rail Heater was struck from behind by the Spiker machine. He further alleged that the rear-end collision caused injuries to his neck and back. Mr. Curl sought damages for, among other things, medical expenses, physical and mental pain and anguish, and diminished earnings capacity.

BNSF filed its answer, which included several affirmative defenses. As its FOURTH DEFENSE, BNSF stated, in pertinent part, that if plaintiff sustained injury or damages as alleged in his petition, then his negligence or contributory negligence, specifically his "[f]ailure to take reasonable steps to avoid consequences to himself and/or mitigate his damages," caused such injuries or damages. Additionally, BNSF generally stated as its NINTH DEFENSE, "Plaintiff failed to mitigate damages and/or to take reasonable steps to avoid consequences to himself."

Thereafter, Mr. Curl filed a motion under Rule 55.27(d) for more definite statements of several of the affirmative defenses including the fourth and ninth defenses. He argued that Rule 55.08 requires a short and plain statement of the facts showing that the pleader is entitled to the defense and that the defendant wholly failed to allege the facts necessary to allow the plaintiff to adequately frame discovery or prepare for trial.

BNSF filed suggestions in opposition to the motion arguing that Missouri law requires that a pleading simply contain "ultimate facts" and that its defenses met the requirement. It further asserted that to the extent its answer lacked specificity, it was due to Mr. Curl's petition being "entirely devoid of factual specificity with respect to many of the key allegations of negligence and damages." Thus, it requested the trial court require Mr. Curl make his petition more definite and certain before it was required to make its answer more definite and certain. BNSF did not argue that any of its affirmative defenses regarding damages were not subject to Missouri's rules of procedure.

The trial court sustained Mr. Curl's motion for more definite statement and instructed BNSF to amend its answer to comport with the requirements of Rule 55.08. On July 7, 2014, BNSF filed its first amended answer. As its FIFTH DEFENSE, BNSF asserted a contributory negligence defense that Mr. Curl "failed to mitigate damages and/or take reasonable steps to avoid consequences to himself" by failing to properly utilize his on-board radio communication system. Specifically, it asserted:

Upon information and belief, at the time of the incident alleged in plaintiff's Petition, Plaintiff failed to properly utilize his on-board radio communication system by improperly reducing the volume on the system and/or by not heeding communications transmitted on the system, and/or by failing to act upon communications transmitted on the system.

BNSF did not assert any other failure to mitigate damages defense in its first amended answer.

Trial was eventually set for December 14-18, 2015. On September 9, 2015, BNSF filed Defendant's Admission of Negligence admitting that it was solely responsible for causing the July 12, 2012 accident in which plaintiff was injured. It reserved the right to submit evidence on issues relating to the medical causation of plaintiff's injuries and to the nature and extent of all injuries and damages. At a pre-trial conference

held on November 4, 2015, forty days before trial, BNSF requested to file an amended answer "to kind of clean up my answer and meld that pleading" since it had admitted negligence. Counsel. for Mr. Curl stated that he had no objection "so long as it doesn't change anything else. We've been operating under that [pleading] on all issues." The trial court granted leave to amend.

Five days later, BNSF filed its second amended answer, which eliminated the contributory negligence/mitigation of damages defense from its first amended answer since it had admitted negligence. BNSF asserted as its SEVENTH DEFENSE in the second amended answer, "Defendant alleges that plaintiff failed to mitigate damages." On November 18, 2015, Mr. Curl filed a motion to strike the SEVENTH DEFENSE asserted in BNSF's second amended answer. He argued that the SEVENTH DEFENSE was an attempt to reassert a failure to mitigate economic damages defense that was improperly pleaded in its original answer as its NINTH DEFENSE. Mr. Curl explained that after the trial court ordered BNSF to amend its original answer to comply with Rule 55.08, BNSF filed its first amended answer stating only a contributory negligence/mitigation of damages defense—by failing to properly utilize his on-board radio. BNSF did not state a failure to mitigate economic damages defense in its first amended answer. Mr. Curl further argued that the SEVENTH DEFENSE is contrary to BNSF's motion to amend on November 4 and the agreement of counsel. Specifically, BNSF moved to amend its answer for the sole purpose to comport with its admission of negligence and Mr. Curl did not object to the amendment "so long as it doesn't change anything else."

In response to Mr. Curl's motion to strike the SEVENTH DEFENSE, BNSF moved to amend its answer to add a short plain statement of fact. The trial court denied BNSF's motion to file an amended answer containing additional affirmative defenses.

Thereafter, on November 23, 2015, twenty-one days before trial, BNSF filed a motion for leave to file a third amended answer. In its proposed third amended answer, BNSF asserted as its EIGHTH DEFENSE:

Defendant alleges that plaintiff failed to reasonably mitigate his damages in the following respects:

a. Plaintiff has failed to make reasonable efforts to return to work with defendant;

b. Plaintiff has failed to make reasonable efforts to seek placement in another job with Defendant BNSF Railway Company;

c. Plaintiff has failed to cooperate with vocational counseling efforts;

d. Plaintiff has failed to use reasonable efforts to mitigate his damages by seeking alternate training and in such ways as may be shown by the discovery in this matter and the evidence at trial.

Mr. Curl filed suggestions in opposition to the motion. The trial court denied BNSF's motion for leave to file a third amended answer on December 4, 2015, and the trial began ten days later.

At trial, Mr. Curl testified that he worked for BNSF as a track laborer/heavy equipment operator in a rail-gang in the maintenance of way department for approximately one year before he was injured. He said that after he was injured, he could not work in the maintenance of way department and was forced to get a job with lower pay and benefits as a teach-

er and coach. His economic expert presented evidence that the difference between what Mr. Curl would have earned in wages and benefits if he continued to work in the maintenance of way department until age sixty-five versus what he expected to earn as a teacher exceeded $2,500,000. Mr. Curl's medical expert opined within a reasonable degree of medical certainty that nothing would have prevented Mr. Curl from working in the maintenance of way department for as long as he wanted had the injury not occurred.

Right before resting its case, BNSF's counsel made an offer of proof of all evidence it sought to admit on the issue of Mr. Curl's failure to mitigate damages affirmative defense. The exhibit contained evidence regarding BNSF's efforts to offer Mr. Curl vocational and position opportunities, Mr. Curl's denial of receiving any assistance offers from BNSF, and other positions Mr. Curl could have worked at BNSF, including a yardmaster position, that paid more than his track laborer position. BNSF also offered a proposed instruction on Mr. Curl's failure to mitigate economic damages, which the trial court denied.

The jury returned a verdict in favor of Mr. Curl in the amount of $4,300,000. This appeal by BNSF followed.

## I.

█ In its first point on appeal, BNSF contends that the trial court erred in denying it the opportunity to adduce evidence and instruct the jury on Mr. Curl's failure to mitigate his damages. It asserts that the trial court erroneously found that such defense was insufficiently pleaded under Rule 55.08 because federal law exclusively governs issues relating to the affirmative defense of failure to mitigate damages, including the pleading of such defense, and Missouri procedure law cannot be interpreted to defeat a federal substantive defense.

█ When adjudicating a FELA case in a state court, federal substantive law binds the state court. *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985); *Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, 10 P.3d 1181, 1186-87 (Ariz. Ct. App. 2000)(in FELA action, trial court erred in applying sheltered work doctrine from state workers' compensation law to exclude railroad's mitigation of damages evidence regarding injured employee's failure to participate in railroad's disability management and internal placement program and railroad's offer to return employee to his job with accommodations); *Kauzlarich v. Atchison, Topeka, & Santa Fe Ry. Co.*, 910 S.W.2d 254, 256-58 (Mo. banc 1995)(in FELA case, trial court's rejection of mitigation of damages instruction on the ground that it was not in MAI was at odds with federal law, which governs the substantive issue of the propriety of a jury instruction concerning mitigation of damages in a FELA action). Issues relating to the measure and mitigation of damages in a FELA case are matters of federal substantive law. *Norfolk & W. Ry. Co. v. Liepelt*, 444 U.S. 490, 493, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980); *Yauch*, 10 P.3d at 1186; *Kauzlarich*, 910 S.W.2d at 257-58. Damages for loss of earning capacity may be recovered in a FELA action. *Bissett v. Burlington N. R.R. Co.*, 969 F.2d 727, 731 (8th Cir. 1992). "Under federal law an employee has a duty to mitigate damages by returning to gainful employment as soon as reasonably possible." *Hawkes v. Norfolk & W. Ry. Co.*, 876 S.W.2d 705, 706 (Mo. App. E.D. 1994). A failure to mitigate damages for loss of earning capacity limits the plaintiff's damages to the difference between what he was able to earn in his position with the railroad before the injury and

what he earned or could have earned after the injury. *Bissett*, 969 F.2d at 731; *Kauzlarich*, 910 S.W.2d at 257-58.

Although federal law controls substantive matters in a FELA case tried in state court, state rules of procedure and practice apply. *Dickerson*, 470 U.S. at 411, 105 S.Ct. 1347. "There can, of course, be no doubt of the general principle that matters respecting the remedy—such as the form of the action, sufficiency of the pleadings, rules of evidence, and the statute of limitations—depend upon the law of the place where the suit is brought." *Central Vermont Ry. Co. v. White*, 238 U.S. 507, 511, 35 S.Ct. 865, 59 L.Ed. 1433 (1915). "The general rule, bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them." *Felder v. Casey*, 487 U.S. 131, 150, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988)(internal quotes and citation omitted).

Local practice, however, may not interfere with, lessen, destroy, or impose unnecessary burdens upon substantive rights or defenses under FELA. *Id.*; *Brown v. W. Ry. of Ala.*, 338 U.S. 294, 296, 70 S.Ct. 105, 94 L.Ed. 100 (1949); *Yauch*, 10 P.3d at 1186-87; *Eubanks v. CSX Transp., Inc.*, 223 Ga.App. 616, 478 S.E.2d 387, 390 (1996); *Lopez v. Hines*, 254 S.W. 37, 40 (Mo. 1923)("[T]he rules of pleading in the state where the action is tried apply and govern even in cases under the federal law, at least where no substantive right of the parties is denied."). Thus, in *Brown v. Western Railway of Alabama*, the United States Supreme Court declined to apply a Georgia local rule of practice requiring a trial court to construe allegations in a complaint "most strongly against the pleader" when considering a motion to dismiss. 338 U.S. at 295, 70 S.Ct. 105. Application of the rule resulted in a dismissal of a FELA claim with prejudice, precluding future re-

covery. *Id.* The Court explained that the "federal right cannot be defeated by the forms of local practice [a]nd we cannot accept as final a state court's interpretation of allegations in a complaint asserting it." *Id.* at 296, 70 S.Ct. 105 (internal citations omitted). Citing its desire for uniformity in adjudication of federally created rights, the Court emphasized its duty "to protect federally created rights from dismissal because of over-exacting local requirements for meticulous pleadings." *Id.* at 299, 70 S.Ct. 105.

Application of Rule 55.08 in this case did not interfere with or restrict BNSF"s substantive FELA rights or defenses. Under either Missouri or federal law, BNSF failed to plead the affirmative defense of failure to mitigate damages and, therefore, waived the defense.

"An affirmative defense seeks to defeat or avoid a plaintiff's cause of action, and alleges that even if plaintiff's petition is true, plaintiff cannot prevail because there are additional facts that permit the defendant to avoid legal responsibility." *Wilmes v. Consumers Oil Co. of Maryville*, 473 S.W.3d 705, 716 (Mo. App. W.D. 2015)(internal quotes and citation omitted). In Missouri, Rule 55.08 requires a party to "set forth all applicable affirmative defenses" with "a short and plain statement of the facts showing that the pleader is entitled to the defense or avoidance." The purpose of the rule is to give notice of the defense to the plaintiff so that the plaintiff may prepare for trial. *Roth v. Roth*, 176 S.W.3d 735, 738 (Mo. App. E.D. 2005); *Mobley v. Baker*, 72 S.W.3d 251, 258 (Mo. App. W.D. 2002). An affirmative defense must be pleaded in the answer to the suit, or it will be waived. *Wilmes*, 473 S.W.3d at 716; *Roth*, 176 S.W.3d at 738. Failure to mitigate damages is an affirmative defense in Missouri. *Hurst v. Kansas*

*City, Mo. Sch. Dist.*, 437 S.W.3d 327, 337 (Mo. App. W.D. 2014).

Federal Rule of Civil Procedure 8(c) requires that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." The party must "state in short and plain terms its defenses to each claim asserted against it." FED. R. CIV. P. 8(b)(1)(A). This "pleading requirement is intended to give the opposing party both notice of the affirmative defense and an opportunity to rebut it." *First Union Nat. Bank v. Pictet Overseas Trust Corp., Ltd.*, 477 F.3d 616, 622 (8th Cir. 2007). *Liguria Foors, Inc. v. Griffith Labs., Inc.*, 2014 WL 6066050 (N. D. Iowa 2014). As in Missouri, the failure to mitigate damages is an affirmative defense under federal law. *Bissett*, 969 F.2d at 731. "Failure to plead such a defense results in the waiver of the defense and its exclusion from the case." *Id.*

BNSF contends that it adequately pleaded the affirmative defense that Mr. Curl failed to mitigate damages because federal law permits the defense to be pleaded generally and it generally pleaded the defense in every answer. The record, however, does not support this contention. BNSF's original answer contained two failure to mitigate damages defenses—the FOURTH DEFENSE, a contributory negligence defense for failing to mitigate damages, and the NINTH DEFENSE, a general assertion that plaintiff failed to mitigate damages. Thereafter, Mr. Curl filed a motion under Rule 55.27(d) for more definite statements of the fourth and ninth affirmative defenses arguing that they failed to comply with Rule 55.08. BNSF opposed the motion arguing that the defenses met Missouri pleading standards and that to the extent that they lacked specificity, it was due to the lack of specificity in Mr. Curl's petition. Significantly, BNSF never challenged the motion for more definite statements on the ground that its answer was properly pleaded under federal law.

After the trial court sustained Mr. Curl's motion and ordered BNSF to file an amended answer, BNSF filed its first amended answer. That answer contained only one assertion of the failure to mitigate damages defense. Specifically, in its FIFTH DEFENSE, BNSF asserted a contributory negligence defense that Mr. Curl "failed to mitigate and/or take reasonable steps to avoid consequences to himself" by failing to properly utilize his on-board radio communication system. BNSF did not assert any other failure to mitigate damages defense in its first amended answer. Nor did it refer to or incorporate its original answer into the new answer. "Once an amended pleading is filed, any prior pleadings not referred to or incorporated into the new pleading are considered abandoned and receive no further consideration in the case for any purpose." *State ex rel. Bugg v. Roper*, 179 S.W.3d 893, 894 (Mo. banc 2005). *See also State ex rel. Crowden v. Dandurand*, 970 S.W.2d 340, 342 (Mo. banc 1998). BNSF's original answer and the defenses raised therein, including the general failure to mitigate damages defense, were abandoned. BNSF's first amended answer, which contained only the contributory negligence/failure to mitigate damages affirmative defense, was BNSF's active pleading for the next year throughout discovery and trial preparation.

Thirty-five days before trial, BNSF was granted leave to file a second amended answer after admitting negligence. In its second amended answer, BNSF eliminated the contributory negligence/failure to mitigate damages defense and attempted to reassert a general failure to mitigate damages defense. Mr. Curl moved to strike the general defense arguing that it was con-

trary to BNSF's motion for leave to amend for the purpose of "cleaning up" the answer in light of its admission of negligence and that such defense had been abandoned by BNSF when it was not included in its first amended answer. The trial court denied BNSF's attempt to assert the additional affirmative defense, and BNSF filed a motion for leave to file a third amended answer, which contained as an EIGHTH DEFENSE a specific allegation that Mr. Curl failed to mitigate damages when he failed to make reasonable efforts to seek placement in another position with BNSF. The trial court denied BNSF's motion for leave to amend. BNSF's second amended answer, which contained no failure to mitigate damages affirmative defenses, was, therefore, its last pleading. Because BNSF failed to plead the affirmative defense of failure to mitigate damages in its answer, it waived the defense under either Missouri or federal law, and the trial court did not err in excluding it from the case. The first point is denied.

## II.

In its second point on appeal, BNSF argues alternatively that the trial court abused its discretion in denying its request to plead its affirmative defense of failure to mitigate damages with more specificity in a third amended answer before trial. BNSF's proposed third amended answer alleged that Mr. Curl failed to reasonably mitigate his damages by failing to make reasonable efforts to return to work at the railroad in another position. BNSF contends that the trial court's denial of leave to file the amended answer caused it hardship because it wasn't allowed to present its failure to mitigate damages defense. It further contends that Mr. Curl would not have suffered any injustice from the filing of the amended pleading because the affirmative defense was asserted in all of BNSF's answers and the parties had engaged in extensive discovery on the issue.

A trial court has broad discretion to grant leave to file an amended pleading at any stage of the proceedings. *Bach v. Winfield-Foley Fire Protection Dist.*, 257 S.W.3d 605, 610-11 (Mo. banc 2008); *Robinson v. City of Kansas City*, 451 S.W.3d 315, 319 (Mo. App. W.D. 2014). Its decision will not be disturbed "absent an obvious and palpable abuse of discretion." *Robinson*, 451 S.W.3d at 319 (internal quotes and citation). A trial court abuses its discretion if its ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *Id.*

Rule 55.33 provides leave to amend a pleading "shall be freely given when justice so requires." While the rules on amendment are liberal, a party does not have free rein to use pleading amendments as a stratagem of litigation. *Robinson*, 451 S.W.3d at 319 n.3; *Concerned Citizens for Crystal City v. City of Crystal City*, 334 S.W.3d 519, 526 (Mo. App. E.D. 2010). Instead, the rules serve to allow a party to present a matter that was unknown or inadvertently neglected at the time of the original pleading without altering the original cause of action. *Id.* Factors to consider in the exercise of discretion to grant or deny leave to amend include: (1) the hardship to the moving party if leave to amend is denied; (2) the moving party's reason for omitting the matter from the original pleading; and (3) any injustice that would result to the nonmoving party should leave to amend be granted. *Bach*, 257 S.W.3d at 611; *Lester v. Sayles*, 850 S.W.2d 858, 869 (Mo. banc 1993).

The trial court's refusal to permit BNSF to amend its pleading inherently caused BNSF some hardship because it was not able to advance an affirmative defense.

However, the affirmative defense of failure to mitigate economic damages was not unknown at the time BNSF filed its original answer and its first amended answer. In fact, BNSF asserted two failure to mitigate damages defenses in its original answer—the FOURTH DEFENSE, a contributory negligence defense for failing to mitigate damages, and the NINTH DEFENSE, a general assertion that plaintiff failed to mitigate damages. At the time BNSF filed its original answer in December 2013 and its first amended answer in July 2014, it had knowledge of at least part of the basis for a proposed affirmative defense that Mr. Curl failed to mitigate economic damages by not making a reasonable effort to return to work in some position at the railroad. Part of the evidence BNSF sought to introduce on such affirmative defense included thirteen letters that BNSF's vocational rehabilitation department sent to Mr. Curl beginning in June 2013 offering vocational counseling, training, and job opportunities.

The reason for BNSF's motion for leave to file a third amended answer was to plead its affirmative defense of failure to mitigate damages with more specificity. BNSF, however, had that opportunity in July 2014 when it filed its first amended answer after the trial court granted Mr. Curl's motion for more definite statements of several of BNSF's affirmative defenses. Indeed, BNSF added factual details to its contributory negligence/failure to mitigate damages defense in its first amended answer. It did not, however, provide more definite statements about its general assertion of failure to mitigate damages in its NINTH DEFENSE and instead chose to abandon it. BNSF's first amended answer, which only contained a contributory negligence/failure to mitigate damages affirmative defense, then governed the next year and a half of discovery and trial preparation. Mr. Curl conducted discovery and

prepared for trial with an understanding that the only mitigation of damages defense was BNSF's assertion that Mr. Curl was partly at fault for his injuries because of his improper use of the radio. A failure to mitigate economic damages by failing to obtain another position at the railroad was not included in the first amended answer as an affirmative defense, and Mr. Curl did not prepare for it. While evidence on such a defense was a subject during discovery, such evidence was also relevant to Mr. Curl's claim for damages for loss of earning capacity. BNSF's proposed amendment to assert a failure to mitigate economic damages affirmative defense three weeks before trial, presumably after discovery had been completed, would have given Mr. Curl little time to respond to and prepare for such defense. Under these circumstances, it cannot be said that the trial court obviously and palpably abused its discretion in denying BNSF's motion for leave to amend. The point is denied.

## III.

In its third and fourth points on appeal, BNSF argues that despite the trial court's ruling regarding the sufficiency of its pleading, the trial court erred in excluding evidence of Mr. Curl's failure to mitigate his damages because Mr. Curl opened the door to the admission of evidence relating to the issue and such evidence was impeachment and contradictory evidence refuting Mr. Curl's claims of extent of injury and economic damages.

A trial court's ruling on the admission of evidence is reviewed only for abuse of discretion. *Howard v. City of Kansas City*, 332 S.W.3d 772, 785-86 (Mo. banc 2011). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the

sense of justice and indicates a lack of careful, deliberate consideration. *Id.* A judgment will be reversed only if the prejudice from the improper admission or exclusion of evidence is outcome-determinative. *Reed v. Kansas City Mo. Sch. Dist.*, 504 S.W.3d 235, 240, (Mo. App. W.D. 2016).

 In its third point, BNSF argues that the trial court erred in excluding evidence of Mr. Curl's failure to mitigate damages because Mr. Curl opened the door to admission of such evidence. It contends that when Mr. Curl's medical expert testified that but for the accident, Mr. Curl would have been able to work for the railroad as long as he wanted, Mr. Curl opened the door for it to present evidence that Mr. Curl had the opportunity to consider other positions at the railroad with the same or better pay and medical and pension benefits and that Mr. Curl's economic expert failed to consider other positions in analyzing Mr. Curl's economic losses.

 "When a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible." *Howard*, 332 S.W.3d at 785 (internal quotes and citation omitted). The purpose behind such rule is to prevent a party from eliciting evidence to his favor and then objecting and preventing his opponent from cross-examining and inquiring further into that evidence. *Walley v. La Plata Volunteer Fire Dept.*, 368 S.W.3d 224, 233 (Mo. App. W.D. 2012).

BNSF asserts that because the medical expert did not limit his answer to the maintenance of way department in which Mr. Curl worked when he was injured, Mr. Curl opened the door for it to present evidence regarding his failure to mitigate damages by failing to seek placement in another position with BNSF. The record, however, does not support BNSF's asser-

tion. During his direct testimony, Mr. Curl's attorney asked his medical expert,

> [R]eferring to Mr. Curl's health and medical status before this incident happened to him, do you have an opinion within a reasonable degree of medical certainty whether Mr. Curl would have been able to work for the rest of his life in the maintenance [of] way department had this injury not happened to him?

The medical expert answered, "There's nothing in the records that would show, but for this accident, he would have had a problem that would have prevented him from working as long as he wanted to work." During cross-examination, defense attorney asked, "And did you recall being asked on direct that prior to this incident there was nothing preventing Mr. Curl from working as long as he wanted to with the railroad?" When the medical expert answered, "Yes," the attorney then asked, "Are you aware of any positions at the railroad that Mr. Curl could perform today?" Mr. Curl's attorney immediately objected, and the trial court sustained the objection. This record reflects that the questions and answers regarding the medical expert's opinion were clearly and carefully limited to Mr. Curl's work in his former job in the maintenance of way department and that defense counsel misstated the expert's opinion on cross-examination in an effort to elicit testimony regarding the failure to mitigate damages defense. Mr. Curl did not open the door to the topic. The third point is denied.

 In its fourth point on appeal, BNSF asserts that the trial court erred in prohibiting it from presenting evidence regarding Mr. Curl's ability to return to work at BNSF in any capacity, independent of its affirmative defense of failure to mitigate damages. It argues that such evidence was admissible as impeachment and contradictory evidence refuting Mr. Curl's

claims that his damages resulted from BNSF's negligence and of the extent of injury and economic damages.

As discussed in point one above, an affirmative defense seeks to defeat or avoid a plaintiff's cause of action and avers that even if plaintiff's petition is true, he cannot prevail because there are additional facts that permit the defendant to avoid legal responsibility. *Wilmes v. Consumers Oil Co. of Maryville*, 473 S.W.3d 705, 716 (Mo. App. W.D. 2015). Nonetheless, evidence that tends to show that plaintiff's cause never had legal existence is admissible on a general denial even though the facts are affirmative insofar they are adduced only to negate the plaintiff's cause of action. *Smith v. Thomas*, 210 S.W.3d 241, 244 (Mo. App. W.D. 2006). Thus, in *Smith*, in an action to recover rent due under a lease, the defendants waived their right to assert the affirmative defense of payment by failing to plead it but were permitted to testify that they indeed paid their rent to negate an element of plaintiff's case. *Id.*

To prevail in his FELA action, Mr. Curl had to generally prove the traditional common law elements of negligence including duty, breach of duty, causation, injury, and damages. *Magelky v. BNSF Ry. Co.*, 579 F.Supp.2d 1299, 1304 (D. N.D. 2008). To prove causation of damages, a plaintiff must establish that the employer's negligence played a part, even the slightest, in producing the injury for which damages are sought. *Bissett*, 969 F.2d at 731. As discussed in point one, a plaintiff in a FELA action may recover damages for loss of earning capacity. *Id.* Earning capacity is the potential for earning money in the future, and the appropriate measure is the present value of the total amount of future earnings. *Id.*

At trial, Mr. Curl presented evidence that because of the injuries he sustained, he could not continue work for the railroad

as a track laborer and was forced to work as a teacher for lower wages and benefits. His expert testified that Mr. Curl's total economic damages exceeded $2.5 million. BNSF contends that it was entitled to present evidence regarding Mr. Curl's ability to return to work at the railroad in any capacity to impeach and contradict Mr. Curl's evidence. BNSF, however, failed to properly preserve this point for review.

"A motion in limine, by itself, preserves nothing for appeal." *Hancock v. Shook*, 100 S.W.3d 786, 802 (Mo. banc 2003). To pursue a claim of evidentiary error, the proponent of evidence must attempt to present it at trial and then make an offer of proof if the trial court excludes it. *Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 452 n.4 (Mo. banc 2014); *Hancock*, 100 S.W.3d at 802. An offer of proof must specifically show what the proffered evidence would be, its object and purpose, and all the facts necessary to establish its relevancy and admissibility. *Key v. Diamond Int'l Trucks*, 453 S.W.3d 352, 362 (Mo. App. W.D. 2015).

A week before trial, BNSF filed Defendant's Suggestions in Support of its Evidence on Damages arguing for the admission of evidence that BNSF contacted Mr. Curl regarding positions it had available that Mr. Curl was capable of performing, not on the affirmative defense of failure to mitigate damages but to refute the elements of Mr. Curl's claim of damages. BNSF, however, did not attempt to present such evidence for such purpose at trial. Before resting its case, BNSF presented a 454-page exhibit consisting of several depositions, letters, discovery requests and responses, evaluations, and information regarding a yardmaster position. It explained that the exhibit was BNSF's offer of proof on the affirmative defense of Mr.

Curl's failure to mitigate damages. It did not assert that the evidence was relevant and admissible to refute Mr. Curl's claims. "A party cannot advance on appeal grounds for admission of evidence different from that presented in the offer of proof at trial." *Whittom v. Alexander–Richardson P'ship*, 851 S.W.2d 504, 510 (Mo. banc 1993). Because BNSF did not attempt to present evidence regarding Mr. Curl's ability to return to work at the railroad in any capacity to impeach and contradict Mr. Curl's evidence, it did not preserve the point for review.[1] The point is denied.

The judgment of the trial court is affirmed.

All concur.

---

1. In the argument section under point four, BNSF raises an additional argument, which is not included in the point relied on. It contends that the trial court erred in excluding evidence that BNSF's vocational rehabilitation department sent Mr. Curl thirteen letters offering vocational counseling, training, and job opportunities and that he did not tell his vocational rehabilitation expert about the communication. At trial, the trial court denied BNSF's request to cross-examine Mr. Curl about his deposition testimony where he denied receiving any correspondence from the department to impeach his credibility. Rule 84.04(e) requires the argument section of a brief to be limited only to those errors included in the point relied on. Because this argument is not encompassed by the point relied on and appears briefly for the first time in the argument section, it is also not reviewed. *Richard v. Wells Fargo Bank, N.A.*, 418 S.W.3d 468, 475 (Mo. App. E.D. 2013).