

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| **HEATHER ROSALES,** | ) |
| | ) |
| **Respondent,** | ) **WD82485** |
| | ) |
| **v.** | ) **OPINION FILED:** |
| | ) **November 26, 2019** |
| **BENJAMIN EQUESTRIAN** | ) |
| **CENTER, LLC,** | ) |
| | ) |
| **Appellant.** | ) |

**Appeal from the Circuit Court of Cass County, Missouri**
The Honorable R. Michael Wagner, Judge

Before Division One: Edward R. Ardini, Jr., Presiding Judge, Mark D. Pfeiffer, Judge
and Cynthia L. Martin, Judge

Benjamin Equestrian Center, LLC ("Benjamin") appeals from a judgment entered

following a jury trial that awarded Heather Rosales ("Rosales") damages for injuries

sustained by Rosales while she attended an event at Benjamin's horserace track. Benjamin

argues the trial court erred in denying its motion for directed verdict and judgment

notwithstanding the verdict ("JNOV"); in excluding evidence showing Benjamin's

compliance with provisions of section 537.325 of the Equine Activities Liability Act[1] ("the Act"); in admitting evidence offered by an expert witness; in admitting evidence in support of an unpled affirmative avoidance; in denying Benjamin's motion for a new trial because the verdict was against the weight of evidence; and for cumulative error. Finding no error, we affirm.

## Factual and Procedural Background[2]

On July 5, 2015, Rosales attended a horse-racing event held at Benjamin's racetrack in Belton. Rosales's family accompanied her. Rosales had never been to a horserace and had no experience with horses. Upon arriving to the racetrack, Rosales accompanied a family friend into an area where racehorses were being unloaded from trailers in preparation for the racing events. Rosales entered the unloading area through an unmonitored open gate. Security personnel did not monitor the unloading area to ensure that spectators were cleared from the area. Aerial photographs show that the racetrack is a straight track, located in a large field or open area, with few permanent fixtures or infrastructure. Gravel lots for vehicle parking are located immediately adjacent to the straight track on one side, and the unloading area for horses is located immediately adjacent to the straight track on the opposite side.

Rosales sat a short distance away from where horses were being unloaded. Rosales and the family friend she was with were asked to move by a horse handler while a horse

---

[1]All statutory references are to RSMo 2016 as supplemented, unless otherwise noted.
[2]"On appeal, in a jury-tried case, we review the evidence and reasonable inferences therefrom in a light most favorable to the jury's verdict, disregarding evidence to the contrary." *Dubinsky v. U.S. Elevator Corp.*, 22 S.W.3d 747, 748 (Mo. App. E.D. 2000).

was being unloaded. The horse was unloaded and was in the process of being brushed when it reared up and fell on Rosales, fracturing her pelvis.

Rosales filed suit against Benjamin on a theory of negligence. At trial, the jury found in favor of Rosales, and awarded damages in the amount of $350,000. The jury apportioned fault between Benjamin and Rosales, finding Benjamin to be eighty percent at fault and Rosales to be twenty percent at fault. The trial court entered judgment consistent with the jury's verdict and awarded Rosales damages in the amount of $280,000.

Benjamin filed this timely appeal. Other facts will be addressed where relevant in connection with our discussion of Benjamin's points on appeal.

## Analysis

Benjamin asserts eight points on appeal challenging the trial court's denial of Benjamin's motion for directed verdict and JNOV; the trial court's exclusion and admission of evidence, including expert witness testimony; the trial court's denial of Benjamin's motion for a new trial; and the prejudicial effect of the trial court's cumulative error. Because of the centrality of section 537.325 to the issues presented by each point, we begin with a discussion of the statute.

## Section 537.325

Section 537.325 provides a limited immunity defense to equine activity sponsors when participants engaged in an equine activity suffer injuries arising from the inherent risks of an equine activity. The Missouri legislature enacted section 537.325 in 1994.[3]

---

[3]At the time of section 537.325's enactment in 1994, Missouri, like many other states enacting equine activity liability statutes, had adopted comparative fault. *See* Terence J. Centner, *The New Equine Liability Statutes*, 62 TNLR 997, 1002 (1995) (surveying equine liability statutes across the United States); *see also Gustafson v.*

3

Missouri's equine activity liability statute codified the common law assumption of risk doctrine. *Frank v. Mathews*, 136 S.W.3d 196, 202 (Mo. App. W.D. 2004) ("[T]he purpose of the Equine Liability Act is to codify the common law assumption of risk principle in the context of a specific recreational activity."). Unlike other state's equine activity liability statutes,[4] the Missouri legislature contemplated a narrow shield of immunity for equine activity sponsors.

Section 537.325.1 sets out the definitions applicable for the statute. An "equine activity sponsor" includes a "partnership or corporation, whether operating or not operating for profit or nonprofit . . . which sponsors, organizes or provides the facilities for, an equine activity . . . ." Section 537.325.1(4). There are at least six different classifications of "equine activity" described in section 537.325, including (1) competitive shows, such as rodeos, steeple chasing, or trail riding; (2) training and teaching activities; (3) boarding activities; (4) riding, inspecting, evaluating an equine, regardless of whether remuneration is received by equine owner; (5) general rides, trips, hunts or other equine activities that are sponsored by an equine activity sponsor; and (6) farrier activities. Section 537.325.1(3)(a)-(f).

Section 537.235.2 provides that equine activity sponsors are immune from claims of injury to equine activity participants that arise out of the inherent risks of equine

---

*Benda*, 661 S.W.2d 11, 15-16 (Mo. banc 1983) (adopting comparative fault). In 2015, section 537.325 was amended to expand the immunity to include other livestock activities.

    [4]For example, unlike Missouri, some states do not provide an exception to equine activity immunity for negligence. *See, e.g.,* ME. STAT. tit. 7 section 4103-A.2; ALA. CODE section 6-5-337(c)(2) (permitting negligence claims, but only for failure to determine rider's ability); WA. REV. CODE section 4.24.540(2)(b)(i)(B) (same); WIS. STAT. section 895.481(3) (same).

4

activities. Section 537.325.1(6) defines "inherent risks of equine . . . activities" to mean "those dangers or conditions which are an integral part of equine . . . activities." The definition provides a non-exclusive list of examples, which can be generally characterized as risks associated with innate animal behaviors that can to be expected during encounters with equine:

> (a) The propensity of any equine . . . to behave in ways that may result in injury, harm or death to persons on or around it;
>
> (b) The unpredictability of any equine's . . . reaction to such things as sounds, sudden movement and unfamiliar objects, persons or other animals;
>
> (c) Certain hazards such as surface and subsurface conditions;
>
> (d) Collisions with other equines, livestock, or objects;
>
> (e) The potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the animal or not acting within his ability[.]

Section 537.325.1(6)(a)-(e).

The immunity afforded to equine activity sponsors is not unlimited, however. Section 537.325.2 provides that:

> ***Except as provided in subsection 4 of this section***, an equine activity sponsor . . . or any other person or corporation shall not be liable for an injury to . . . a participant resulting from the inherent risks of equine or livestock activities and, ***except as provided in subsection 4 of this section***, no participant or a participant's representative shall make any claim against, maintain an action against, or recover from an equine activity sponsor . . . from injury, loss, damage or death of the participant resulting from any of the inherent risks of equine . . . activities.

Section 537.325.2 (emphasis added). The plain language of section 537.325.2 thus directs that even if all other requirements for immunity described in section 537.325.2 are met --

5

that the injured party was a participant engaged in equine activity and was injured by an inherent risk of that activity -- immunity for an equine activity sponsor is circumscribed by the exceptions enumerated in section 537.325.4.

Section 537.325.4 provides:

4. The provisions of subsection 2 of [section 537.325] shall not prevent or limit the liability of an equine activity sponsor . . . if the equine activity sponsor[:]

(1) Provided the equipment or tack and knew or should have known that the equipment or tack was faulty and such equipment or tack was faulty to the extent that the equipment or tack caused the injury; or

(2) Provided the equine or livestock and failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity or livestock activity and determine the ability of the participant to safely manage the particular equine or livestock based on the participant's age, obvious physical condition or the participant's representations of his or her ability;

(3) Owns, leases, rents or otherwise is in lawful possession and control of the land or facilities upon which the participant sustained injuries because of a dangerous latent condition which was known to the equine activity sponsor, equine professional, livestock activity sponsor, livestock owner, livestock facility, livestock auction market, any employee thereof, or person and for which warning signs have not been conspicuously posted;

(4) Commits an act or omission that constitutes willful or wanton disregard for the safety of the participant and that act or omission caused the injury;

(5) Intentionally injures the participant;

*(6) Fails to use the degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.*

(Emphasis added.)  The exceptions described in section 537.325.4 plainly express the General Assembly's intent to narrow the shield of immunity available to equine activity

6

sponsors so as to cover inherent risks of equine behavior, but not risks that are created or enhanced by an equine activity sponsor.

Central to this appeal is section 537.325.4(6), which articulates the standard of care for common law negligence. *See Frank v. Mathews*, 136 S.W.3d 196, 203 (Mo. App. W.D. 2004) ("[Section 537.325.4(6)] states the general standard of care in negligence cases, illustrat[ing] that the act was not intended to relieve sponsors . . . from any duty that common law negligence principles impose upon them."). Although Benjamin argues that it is incongruent to except ordinary negligence from a statute that affords immunity because the effect of the exception is to swallow the immunity, we disagree. That seeming incongruence is readily explained. Section 537.325 extends immunity to equine activity sponsors for injuries caused by the inherent risks of equine activities -- that is, risks equine activity sponsors do not create or cannot reasonably control. Section 537.325 does not extend immunity, however, for injuries caused by risks an equine activity sponsor creates, enhances, or can reasonably control.

With this understanding of the scope of section 537.325 in mind, we turn to Benjamin's points on appeal.

### Point One

Benjamin's first point asserts that the trial court erred in denying its motion for a directed verdict and for judgment notwithstanding the verdict ("JNOV") because section 537.325's immunity provisions barred Rosales's claim as a matter of law. Benjamin asserts it was immunized from Rosales's claim because she was a participant in an equine activity whose injury resulted from an inherent risk of equine activity.

7

"The standard of review for the denial of a judgment notwithstanding the verdict (JNOV) is essentially the same as review of the denial of a motion for directed verdict." *Finch v. Campbell*, 541 S.W.3d 616, 623 (Mo. App. W.D. 2017). "When the grant or denial of a directed verdict or a JNOV is based upon a matter of law . . . we review the trial court's decision *de novo*." *Id.* (citing *Bailey v. Hawthorn Bank*, 382 S.W.3d 84, 92 (Mo. App. W.D. 2012)). "Statutory interpretation is a question of law, which is subject to *de novo* review[.]" *Hervey v. Missouri Dep't of Corr.*, 379 S.W.3d 156, 163 (Mo. banc 2012). "The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *Id.*

The plain language of section 537.325.2 states that immunity is available to equine activity sponsors "except as provided in subsection 4 of [section 537.325]." Subsection 4 provides an exception to immunity if the equine activity sponsor's conduct falls below "th[e] degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances." Thus, the immunity afforded by section 537.325.2 applies only where: (1) a named defendant is an equine activity sponsor; (2) the subject claim arises from an injury to or death of a participant in an equine activity; (3) the death or injury resulted from the inherent risks of equine activities; and (4) no exception to immunity under section 537.325.4 applies.

Here, Rosales claimed that Benjamin was negligent. Her verdict director instructed the jury to find that Benjamin was negligent in one or more of the following particulars:

Failing to secure an area for the safe unloading and preparation of horses;

8

Failing to control access to an area where the horses were being unloaded and prepared;

Failing to supervise the unloading and preparation of horses;

Failing to provide adequate security for the area where the horses were being unloaded and prepared;

Or failing to provide adequate warnings.

The jury returned a verdict in favor of Rosales and thus found Benjamin to be negligent in one or more of these disjunctively submitted particulars.

Benjamin does not challenge the sufficiency of the evidence to support the jury's finding that it was negligent as submitted by Rosales's verdict director. Instead, Benjamin argues that section 537.325.2's immunity provision bars Rosales's claim as a matter of law because Rosales was a "participant"[5] engaged in an "equine activity" whose injury was caused by the "inherent risks" of equine activity, and "none of [its] alleged acts or omissions enhanced [Rosales's] risk of injury from the inherent dangers involved in equine activities." [Appellant's Brief, p. 19]. In other words, Benjamin argues that even if it was negligent, its negligence did not enhance the risk of injury to Rosales. We disagree.

Rosales was injured when a horse fell on her while she was in the unloading area for race horses. "Race horses are spirited and temperamental, even unpredictable[.]" *Humes v. Salerno*, 351 S.W.2d 749 (Mo. 1961). A horse rearing up and falling over onto a person who is nearby is an inherent risk of equine activities. However, the disjunctive submissions in Rosales's verdict director each relate to a means by which Benjamin's

---

[5]The parties contest whether Rosales was a "participant" in an equine activity, a topic we discuss, *infra*.

9

negligence enhanced the risk of injury to a person in the unloading areas. It is obvious that negligently permitting people to access and remain in the horse unloading area, ***near an inherent risk***, necessarily enhances that inherent risk.

We reached a similar conclusion in *Frank v. Matthews*, 136 S.W.3d 196, 198 (Mo. App. W.D. 2004), where an inexperienced rider suffered an injury when she fell from a horse while taking riding lessons. Despite the rider's inexperience, the riding instructor directed the rider to tap the horse's neck with a riding crop. *Id.* The horse jolted forward and turned at the same time causing the rider to lose her balance and fall from the horse. *Id.* The rider filed an action claiming the stable owner was negligent in evaluating the experience of the rider to use a riding crop and safely manage the horse that she rode. *Id.* The trial court granted summary judgment to the stable owner on the basis of section 537.325.2 immunity. *Id.* On appeal, we reversed, and held that a claim of negligence predicated on section 537.325.4(6) is not barred by section 537.325.2 immunity so long as the injury arose from the negligence of the equine activity sponsor, and not merely the inherent risk of equine activity. *Id.* at 202. "[Equine activity] sponsors [] have no duty to protect the participants from [the inherent risk of equine activity] . . . [a]t the same time, [equine activity] participants do not assume the risk created by the sponsor's negligence. Sponsors are not, therefore, relieved from liability for every failure to exercise due care." *Id.* (internal citations omitted). Because evidence in the record supported the rider's claim of negligence based on the instructor's failure to instruct the rider concerning the use of the riding crop, we found that the equine activity sponsor's negligence enhanced the risk of injury. *Id.* at 204-05. The same conclusion can be reached here. Benjamin's negligence

10

as submitted in Rosales's verdict director enhanced the risk that a patron at Benjamin's racetrack would be injured by a horse whose inherent traits could lead the horse to rear up and fall over.

Benjamin also argues that section 537.325.1(1) provides that a spectator who "places [herself] in an unauthorized area" thereby "engages in an equine activity." As such, according to Benjamin, although Rosales arrived at the racetrack as a mere spectator, she became a "participant" (defined by section 537.325.1(12) as "any person . . . who engages in an equine activity") barred from recovering for injuries occasioned by an inherent risk of equine activities because the evidence established she was in an unauthorized area. Benjamin relies on the fact that it posted signage in the unloading area disclaiming liability for injuries in the area.[6] Benjamin's argument is unpersuasive.

It is immaterial whether Rosales was merely a spectator (whose injury claim would not be barred by section 537.325 as a matter of law, as that statute only applies to participants in equine activities), or whether she became a "participant" engaged in an equine activity because she was a spectator in an unauthorized area. That contested issue is rendered academic by the fact that Benjamin's claimed immunity under section 537.325 was extinguished by its ordinary negligence, one of the six exceptions to immunity described in section 537.325.4.

The trial court did not err in denying Benjamin's motion for directed verdict and motion for JNOV.

---

[6]The subject of Benjamin's signage, and its effect, is discussed in greater detail, *infra*, in connection with Benjamin's third point on appeal.

Point One is denied.

## Point Two

Benjamin's second point asserts that the trial court erred in denying Benjamin's motion for a directed verdict and its motion for JNOV because the implied primary assumption of the risk doctrine bars Rosales's claim of negligence as a matter of law. Our standard of review for this point is the same as is described in connection with Benjamin's first point.

Pursuant to the common law assumption of risk doctrine, "if a person voluntarily consents to accept the danger of a known and appreciated risk, that person may not sue another for failing to protect him from it." *See Coomer v. Kansas City Royals Baseball Corp.*, 437 S.W.3d 184, 191 (Mo. banc 2014). There are differing applications of this common law doctrine. *See generally id.* at 191-94 (discussing the distinction between "express," "implied primary," and "implied secondary" assumption of risk doctrines.) Benjamin argues that the implied primary assumption of risk doctrine bars Rosales's claim. Implied primary assumption of risk applies "when the risk arises from the circumstances (e.g., from a condition on the defendant's property or the inherent nature of the defendant's activity)" and it "completely bars recovery by a plaintiff who knowingly and voluntarily encounters that risk." *Id.* at 192. Implied primary assumption of risk "is not really an affirmative defense; rather, it indicates that the defendant did not even owe the plaintiff any duty of care." *Id.* at 193.

The common law assumption of risk doctrine has no application here. Section 537.325 codified the common law assumption of risk doctrine in the context of equine

12

activities. *Frank*, 136 S.W.3d at 202 (holding that "the purpose of [section 537.325] is to codify the common law assumption of risk principle in the context of a specific recreational activity"). As a result, the extent to which assumption of risk remains available to defeat a claim of injury to a participant arising out of the inherent risks of an equine activity is now controlled by statute. A discrepancy, if any, between the scope of the common law assumption of risk doctrine and the provisions of section 537.325 must be resolved in favor of the statute. *See* section 1.010 ("No act . . . of this state shall be held . . . limited in its scope or effect . . . for the reason that it is in derogation of, or in conflict with, the common law . . . but all acts of the general assembly, or laws, shall be liberally construed so as to effectuate the true intent and meaning thereof."); *see also In re Estate of Parker*, 25 S.W.3d 611, 616 (Mo. App. W.D. 2000) (holding that a statute abrogated by necessary implication the common law doctrine relating to conversion when that statute established a specific claim for conversion within a specific context).

We have already explained that section 537.325.2 affords immunity for the inherent risks of equine activity, but not for enhancement of those risks occasioned by an equine activity sponsor's ordinary negligence. In other words, though a participant in an equine activity assumes the risk of injury caused by an inherent risk of equine activity, a participant does not assume the risk of injury caused by one of the exceptions to immunity set forth in section 537.325.4, including the exception for ordinary negligence.

As explained in connection with Benjamin's first point, Benjamin was found to have been negligent, and Benjamin's negligence was of a nature that it enhanced the risk that Rosales would be injured by an inherent risk of an equine activity. As a result, Benjamin

13

is not immune from liability pursuant to the plain language of section 537.325. Correspondingly, Rosales did not assume the risk of injury where that risk was enhanced by Benjamin's negligence. Benjamin's reliance on the common law doctrine of assumption of risk to claim otherwise would render the statutory exceptions to immunity described in section 537.325.4 meaningless. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992) (holding that Missouri courts do not presume that the legislature enacts meaningless provisions).

Even if the common law doctrine of assumption of risk remained an available defense to a claim of injury otherwise subject to section 537.325, (which it does not), Benjamin would not prevail. The common law doctrine of implied primary assumption of risk would not operate to bar Rosales's claim of negligence. *See Coomer*, 437 S.W.3d at 197-98 (reasoning that the implied primary assumption of risk doctrine does not excuse a recreational activity sponsor from "a duty of reasonable care not to alter or increase . . . inherent risks"). Missouri law is replete with cases imposing a duty of care not to enhance exposure to the inherent risk of equine activity through acts or omissions of negligence. *Compare Keaton v. Good*, 350 S.W.2d 119, 127 (Spr. Ct. App. 1961) (holding that the "sponsors of [a horse show] affair owed the plaintiff the duty to exercise care commensurate with the circumstances to see that no injury was occasioned to him" and a participant in a horse show "assumed the ordinary risks inherent in the activity in which he was engaged, but [] did not assume those risks which were associated with the negligence of others."); *with McKim v. Sears Rodeo Association, Inc.*, 789 S.W.2d 217, 220 (Mo. App. W.D. 1990) (holding that a rodeo operator was not negligent for injuries to a rider when

14

the rider elected, without the foreknowledge or permission of the rodeo operator, to direct parking traffic from horseback and the rider was thrown from the horse after car honked its horn).[7]  Common law principles of implied assumption of risk thus align with the exception to statutory immunity for equine activities where an inherent risk is enhanced by ordinary negligence.  *Frank*, 136 S.W.3d at 202 ("Missouri's Equine Liability Act seems to apply [common law assumption of risk] principles to equine activity sponsors and professionals.").

The trial court did not err in denying Benjamin's motion for directed verdict and motion for JNOV.

Point Two is denied.

---

[7]*See also Slaughter v. Sweet & Piper Horse & Mule Co.*, 259 S.W. 131, 134 (Mo. App. K.C. Dist. 1924) (holding that a livestock auction company could be held liable for negligent behavior of an employee that caused an injury to a spectator, who had ignored a warning placard disclaiming the stockyard's liability when standing inside an auction ring railing, when the stockyard employee inflicted a "whale of a beating" on a mule during an auction, which caused the shod mule to bolt and trample the spectator); *Buckner v. Stockyards Horse & Mule Co.*, 120 S.W. 766, 770 (Mo. 1909) (holding stockyard company liable even though injury caused by unruly conduct of wild horses when company failed to maintain premises); *Golden v. Chicago, R.I. & P. Ry. Co.*, 84 Mo. App. 59, 64-65 (Mo. App. K.C. Dist. 1900) (holding a defendant liable for injuries resulting from defendant's long-left lumber at an intersection of a highway when horses of a "gentle" disposition were frightened into a gallop at the sight of the lumber); *Heald v. Cox*, 480 S.W.2d 107, 112 (Mo. App. K.C. Dist. 1972) (holding an equine activity sponsor liable for injuries caused to an unwarned, inexperienced rider by a horse with a known proclivity to buck); *Bell v. Leslie*, 24 Mo. App. 661, 669-70 (Mo. App. K.C. Dist. 1887) (holding that a racehorse owner was not liable when plaintiff failed to show a negligent act or omission regarding knowledge of a racehorse's tendency to "run away" when plaintiff's horse was injured on a racetrack and both horses were engaged in racetrack activities); *Ogan v. Perkins*, 191 S.W.2d 666, 667-68 (Mo. 1945) (recognizing equine activity sponsor had a duty to exercise ordinary care to ensure saddle girth was tight enough to be reasonably safe before renting a horse to rider); *Humes v. Salerno*, 351 S.W.2d 749, 752 (Mo. 1961) (holding that a horse-owner is liable for failure to warn about or mitigate the risks arising from generally known proclivities of horses); *Robidoux v. Busch*, 400 S.W.2d 631, 639 (Mo. App. S.L. Dist. 1966) (ruling that equine activity sponsors are liable for failing to account for risk caused by the known propensities of mules to run away).

15

**Point Three**

Benjamin's third point argues that the trial court erred by excluding evidence of signs allegedly posted in compliance with section 537.325 because the signs were an element of Benjamin's affirmative defense of immunity.

"A trial court's ruling on the admission of evidence is reviewed only for abuse of discretion." *Curl v. BNSF Railway Co.*, 526 S.W.3d 215, 225 (Mo. App. W.D. 2017). "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* "A judgment will be reversed only if the prejudice from the improper admission or exclusion of evidence is outcome determinative." *Id.*

Section 537.325.6 requires equine activity sponsors to "post and maintain signs" which contain a disclaimer as follows:

WARNING

Under Missouri law, an equine activity sponsor, an equine professional, a livestock activity sponsor, a livestock owner, a livestock facility, a livestock auction market, or any employee thereof is not liable for an injury to or the death of a participant in equine or livestock activities resulting from the inherent risks of equine or livestock activities pursuant to the Revised Statutes of Missouri.

Section 537.325.6 provides other requirements regarding how large the warning sign must be and where the warning sign must be located. [8]

---

[8]In full, section 537.325.6 provides:

Every equine activity sponsor and livestock activity sponsor shall post and maintain signs which contain the warning notice specified in this subsection. Such signs shall be placed in a clearly

16

Benjamin asserts that the trial court erred because it excluded photographs that showed Benjamin had complied with section 537.325.6 by posting the required statutory disclaimer on its premises. The excluded photographs (marked as Exhibits 550 and 550A) depicted side-by-side signage in both English and Spanish, with the English language sign tracking nearly verbatim the language of section 537.325.6. Exhibit 550's depiction of the English language sign referred to Missouri statutes, while Exhibit 550A redacted the reference to Missouri statutes. The trial court excluded Exhibits 550 and 550A because both recited, nearly verbatim, the text of section 537.325.6. The trial court reasoned that admission of the exhibits could inject error by improperly displaying a statute to the jury. *See Eckelkamp v. Burlington Northern Santa Fe Ry. Co.*, 298 S.W.3d 546, 550 (Mo. App. E.D. 2009) (holding that reading and displaying a statute to the jury is prejudicial error).

---

visible location on or near stables, corrals or arenas where the equine activity sponsor or livestock activity sponsor conducts equine or livestock activities if such stables, corrals or arenas are owned, managed or controlled by the equine activity sponsor or livestock activity sponsor. The warning notice specified in this subsection shall appear on the sign in black letters on a white background with each letter to be a minimum of one inch in height. Every written contract entered into by an equine professional, an equine activity sponsor, a livestock activity sponsor, a livestock owner, a livestock facility, a livestock auction market, or any employee thereof for the providing of professional services, instruction or the rental of equipment, tack, or an equine to a participant, whether or not the contract involves equine or livestock activities on or off the location or site of the equine professional's, equine activity sponsor's, or livestock activity sponsor's business, shall contain in clearly readable print the warning notice specified in this subsection. The signs and contracts described in this subsection shall contain the following warning notice:

WARNING

Under Missouri law, an equine activity sponsor, an equine professional, a livestock activity sponsor, a livestock owner, a livestock facility, a livestock auction market, or any employee thereof is not liable for an injury to or the death of a participant in equine or livestock activities resulting from the inherent risks of equine or livestock activities pursuant to the Revised Statutes of Missouri.

Benjamin asserts that the exclusion of the photographs was error because exclusion of the exhibits prevented it from establishing an element of its affirmative defense of immunity. We disagree.

Compliance with section 537.325.6 was immaterial to establishing Benjamin's immunity defense. Nothing in section 537.325.6 references the immunity provision under 537.325.2. Nor does any language in section 537.325.2 necessitate compliance with section 537.325.6 as a condition of asserting immunity. It appears that the signage requirements described in section 537.325.6 are a free-standing statutory obligation imposed on equine activity sponsors that is not tethered in any way to the immunity otherwise addressed in section 537.325.2.

Even if compliance with the signage requirements described in section 537.325.6 can be construed as an unexpressed condition to an equine activity sponsor's ability to claim immunity, (an issue we need not decide), Benjamin was not prejudiced by exclusion of Exhibits 550 and 550A offered for that purpose. Rosales never argued that Benjamin was not entitled to immunity based on alleged noncompliance with section 537.325.6. Rosales only argued that Benjamin was not entitled to immunity because of the statutory exception for ordinary negligence. Benjamin does not argue, nor would we find, that compliance with the section 537.325.6 signage requirements negates the exception to immunity set forth in section 537.325.4(6).[9]

_____

[9]The exception to immunity for latent conditions on land or facilities described in section 537.325.4(3) does refer to an obligation to post a warning. It is not clear, however, whether that is a different warning than is contemplated by section 537.325.6. In any event, the immunity exception of section 537.325.4(3) is not at issue in this case.

18

The trial court did not error in excluding the photographs.[10]

Point Three is denied.

## Point Four

Benjamin's fourth point argues that the trial court erred "by refusing [Benjamin's] jury instructions and verdict director" because the instructions and verdict director that were given incorrectly stated the law and omitted Benjamin's properly pleaded and proved affirmative defenses.

Benjamin's point on appeal is multifarious because it challenges two distinct trial court actions -- the giving of Rosales's "instructions and verdict director," and the refusal of "Benjamin's jury instructions and verdict director." "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." *Griffits v. Old Republic Ins. Co.,* 550 S.W.3d 474, 478 n.6 (Mo. banc 2018). However, we exercise our discretion to review Benjamin's claim of error relating to the trial court's refusal of its jury instructions and verdict director. We do so because Benjamin abandoned its claim of error related to submission of Rosales's instruction and verdict director by failing to develop that claim in the argument portion of its brief. *Weisenburger v. City of St. Joseph*, 51 S.W.3d 119, 124 (Mo. App. W.D. 2001) ("Arguments raised in the points relied on that are not

---

[10]Benjamin has not argued that it was error to exclude Exhibits 550 and 550A because the photographs were relevant on the issue of Rosales's comparative fault. We note, *ex gratia*, that the jury received evidence from other sources about the presence of warning signs in the unloading area. For example, the trial court permitted the admission of Exhibit 550B, a photograph which showed the Spanish language warning sign but redacted the English language warning sign. The Spanish language warning sign did *not* track the language of section 537.325.6, and did *not* refer to Missouri statutes. Benjamin was not prohibited, therefore, from admitting evidence for the general purpose of establishing that Rosales knew or should have known that she was entering an area of risk. Obviously, the jury believed that Rosales was in part at fault for her injuries, as it attributed twenty percent of the fault to Rosales.

19

supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review.").

"We review a trial court's decision not to give a proffered instruction under a *de novo* standard of review, determining whether it was supported by the evidence and the law." *Rader Family Ltd. P'ship, L.L.L.P. v. City of Columbia*, 307 S.W.3d 243, 252 (Mo. App. W.D. 2010) (citing *Marion v. Marcus*, 199 S.W.3d 887, 893-94 (Mo. App. W.D. 2006)). "We review a proposed non-MAI instruction to determine 'whether the jury [could have understood] the instruction and whether the instruction follow[ed][the] applicable substantive law by submitting the ultimate facts required to sustain a verdict.'" *Wiskur v. Johnson*, 156 S.W.3d 477, 481 (Mo. App. S.D. 2005) (quoting *Seitz v. Lemay Bank and Trust, Co.*, 959 S.W.2d 458, 462 (Mo. banc 1998).

Though the refused instructions are not identified in Benjamin's point relied on, in the argument portion of its brief, Benjamin identifies two proffered instructions and a proffered verdict director that were refused by the trial court. Instruction D sought to provide the jury with the statutory definition of "participant," "engages in an equine

activity," and "inherent risks of equine activities."[11]  Instruction E[12] sought to provide the

jury select language from section 537.325.6 relating to the posting of liability disclaimer

signage.[13]  Instruction F was a proffered verdict director that instructed the jury to find for

Benjamin if "[Rosales] was a participant whose injury, loss or damage resulted from any

of the inherent risks of equine activities."  Benjamin alleges that these non-MAI

---

[11]As proffered, Instruction D provided:

Instruction No. Refused D

The term "participant" as used in these instructions means a person who engages in equine activity.

The phrase "engages in an equine activity" as used in these instructions includes:

> a spectator who places herself in an unauthorized area.

The phrase "inherent risks of equine activities" as used in these instructions means those dangers or conditions which are an integral part of equine activities, including but not limited to:

> The propensity of any equine to behave in ways that may result in injury, harm or death to persons on or around it;

> the unpredictability of any equine's reaction to such things as sounds, sudden movement and unfamiliar objects, persons or other animals;

> certain hazards such as surface and subsurface conditions;

> collisions with other equines or objects; or

> the potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the animal or not acting within his ability.

[12]Appellant's brief identifies this instruction as Instruction F, but the substance of the instruction clearly reflects the instruction proffered as Instruction E.

[13]As proffered, Instruction E provided:

Instruction No. Refused E

Every equine activity sponsor shall post and maintain a sign in a clearly visible location where the equine professional conducts equine activities which contains the following warning notice in black letters on a white background with each letter to be a minimum of one inch in height:

WARNING

Under Missouri law an equine profession is not liable for an injury to or death of a participant in equine activities resulting from the inherent risks of equine activities pursuant to the Revised Statutes of Missouri.

21

instructions were collectively required to be submitted in order to "set forth the law" relating to its immunity under section 537.325. We disagree.

Rule 70.02(b) permits the giving of non-MAI instructions when there is no applicable MAI. "[S]uch instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Rule 70.02(b). "A non-MAI instruction must conform to the theory of MAI." *Steenrod v. Klipsch Hauling Co., Inc.* 789 S.W.2d 158, 167 (Mo. App. E.D. 1990). "Therefore, we test the instruction as to whether it follows the substantive law and can be readily understood." *Id.*

Benjamin's refused instructions do not follow the substantive law. Instruction F, the proffered verdict director, instructed the jury to find in favor of Benjamin "if [Rosales] was a participant whose injury, loss or damage resulted from any of the inherent risks of equine activities." This instruction ignores section 537.325.4(6)'s ordinary negligence exception, and thus failed to instruct the jury that it could not find for Benjamin if Benjamin was determined to be negligent. Because it was not error to refuse Benjamin's proffered verdict director, it was not error to refuse Instruction D which served no purpose other than to define terms used in the refused verdict director. Finally, Instruction E quoted verbatim from portions of section 537.325.6 (itself improper, as we discuss, *supra*), and afforded the jury with no guidance about how the signage requirement related to its decision making responsibilities. More to the point, as explained in our discussion of point three, Benjamin's compliance with the signage requirements described in section 537.325 was immaterial to whether Benjamin's ordinary negligence negated Benjamin's claim of immunity.

22

The trial court did not abuse its discretion in refusing Benjamin's proffered instructions and verdict director.

Point Four is denied.

**Point Five**

Benjamin's fifth point asserts that the trial court erred in permitting Rosales "to offer evidence" of negligence because negligence was an affirmative avoidance and Rosales failed to plead an affirmative avoidance. As previously addressed, we review claims of error relating to the admission or exclusion of evidence for an abuse of discretion. *Curl*, 526 S.W.3d at 225.

An "'affirmative defense' is defined as a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." *Allen v. Titan Propane, LLC*, 484 S.W.3d 902, 905 (Mo. App. S.D. 2016) (quotations omitted). An avoidance is "an affirmative defense to an affirmative defense." *Id.* An avoidance, like an affirmative defense, is to be pled in response "to a preceding pleading." Rule 55.08.

Benjamin claims that because it pled immunity under section 537.325.2 as an affirmative defense, and because ordinary negligence is an exception to immunity under that section, Rosales was obligated to file a reply asserting negligence as an avoidance of the immunity defense. Because Rosales failed to do so, Benjamin alleges it was error to permit Rosales to admit evidence of Benjamin's negligence.

Though Benjamin's point on appeal is framed in terms of evidentiary error, Benjamin does not direct this court to specific evidence that was admitted and about which

23

it now complains. Rule 84.04(d)(1)(A) requires a point on appeal to "[i]dentify the trial court ruling or action that the appellant challenges." Benjamin has also failed to direct this court to the record to establish wherein and how it timely objected to the admission of now contested evidence in order to preserve a claim of error for our review. Rule 84.04(e) requires the argument portion of a brief to "include a concise statement describing whether the error [claimed in a point on appeal] was preserved for appellate review; if so, how it was preserved; and the applicable standard of review." "Compliance with Rule 84.04 is mandatory." *Terpstra v. State*, 565 S.W.3d 229, 241 (Mo. App. W.D. 2019). "'A party's failure to substantially comply with Rule 84.04 preserves nothing for appellate review . . . .'" *Shelter Mut. Ins. Co. v. Mitchell*, 413 S.W.3d 348, 352 (Mo. App. S.D. 2013) (quoting *FIA Card Servs., N.A. v. Hayes*, 339 S.W.3d 515, 517 (Mo. App. E.D. 2011)).

Even if we were to consider Benjamin's unpreserved claim of error *ex gratia*, we would not find it to be meritorious. Benjamin relies on *Billings Mut. Ins. Co. v. Cameron Mu. Ins. Co.*, 229 S.W.3d 138, 143 (Mo. App. S.D. 2007) to support its argument that Rosales waived the avoidance of its negligence by failing to file a reply raising the avoidance. *Billings* does not aid Benjamin.

In *Billings*, the Southern District held that a plaintiff waived its affirmative avoidances when it failed to file a responsive pleading to a defendant's pleading that asserted an affirmative defense. *Billings Mut. Ins. Co.*, 229 S.W.3d at 143. The court ruled that the plaintiff's failure to file a responsive pleading waived the affirmative avoidances unless the trial court permitted an amendment to the pleadings, or the affirmative avoidance was tried by implied or actual consent of the parties. *Id.* The Southern District reasoned

24

that the defendant did not consent to try the issues of avoidance because the defendant objected "both when [Plaintiff] asserted the avoidance in arguing the motions for summary judgment, *and when [Plaintiff] attempted to offer evidence on the avoidances at trial*." *Id.* (emphasis added).

Benjamin's failure to direct this court to any location where it timely objected to the admission of evidence offered by Rosales on the issue of Benjamin's negligence requires us to conclude that negligence as an avoidance of Benjamin's affirmative defense of statutory immunity pursuant to section 537.325 was tried by implied consent. "It is not our duty to scour the record on appeal in order to ascertain the appellant's claim of error." *Crawford County Concerned Citizens v. Missouri Dept. of Natural Resources*, 51 S.W.3d 904, 908 (Mo. App. W.D. 2001).

Moreover, given the special context in which Rosales's claim for relief arose in this case, we would not have found it to be an abuse of discretion for the trial court to permit the admission of evidence of Benjamin's negligence notwithstanding Rosales's failure to plead the avoidance of negligence. In the context of enforcement of Rule 55.08, "[a] special problem arises when a plaintiff anticipates an affirmative defense and pleads the case accordingly." 15 LESLIE PATRICE CULVER, MISSOURI PRACTICE: CIVIL RULES PRACTICE - AFFIRMATIVE DEFENSES AND AVOIDANCES section 55.08:1 (2018 ed.). That scenario is particularly likely to manifest itself when the nature of an avoidance is as well an affirmative theory of recovery. Section 537.325.4(6) identifies ordinary negligence of an equine activity sponsor as an exception to section 537.325.2 immunity. From a practical standpoint, a person injured by an equine activity

25

will almost certainly seek to recover on a theory of ordinary negligence. A plaintiff who files suit against an equine activity sponsor on a theory of negligence is, in effect, anticipatorily pleading an avoidance to section 537.325.2 immunity.

While strict and technical compliance with Rule 55.08 requires a reply alleging the avoidance of negligence in response to an equine activity sponsor's answer asserting the affirmative defense of immunity pursuant to section 537.325, a reply would merely restate the affirmative allegations of negligence already set forth in the plaintiff's petition. The purpose of Rule 55.08, as with other rules describing technical pleading requirements, is "to present, define, and isolate the issues so that the trial court and all of the parties have notice of the issues." *Peterson v. Discover Property & Casualty Insurance Company*, 460 S.W.3d 393, 410 (Mo. App W.D. 2015). Here, all parties were well-apprised of the issues, including Rosales's claim that Benjamin was negligent. Insisting on a duplicative filing of an already asserted claim in order to demonstrate technical compliance with Rule 55.08 would not further the purpose of isolating and notifying the parties of the issues.

The trial court did not err in permitting Rosales to admit evidence relevant to the issue of Benjamin's negligence.

Point Five is denied.

## Point Six

Benjamin's sixth point argues the trial court erred when it denied Benjamin's "motion to strike" the expert witness testimony of Marcy Shelton ("Shelton") because her

26

testimony did not meet the requirements for admissibility under section 490.065.[14] Benjamin asserts that Shelton's testimony was not based on reliable methodology and did not contain specialized knowledge that would have assisted the jury.

As discussed *supra*, Rule 84.04(e) requires appellant's to "include a concise statement describing whether the error [claimed in a point relied on] was preserved for appellate review; if so, how it was preserved; and the applicable standard of review." Here, beyond asserting that the trial court erred by denying Benjamin's motion to strike, Benjamin does not direct this court to any portion of the record demonstrating its preservation of its sixth point for our review. Our independent review of the record on appeal establishes that on August 20, 2018, and thus prior to trial, Benjamin filed a Motion to Exclude Shelton's opinion testimony. On that same day, Benjamin filed objections and designations for Shelton's pretrial deposition testimony. Benjamin requested the court sustain it objections and designations in the event the trial court overruled its "Motion to Strike Ms. Shelton as plaintiff's expert." We therefore presume that Benjamin's reference to a "motion to strike" in its sixth point on appeal is an intended reference to Benjamin's Motion to Exclude filed on August 20, 2018.

The record on appeal does not include any indication of the trial court's ruling on Benjamin's Motion to Exclude. However, the trial court did hold a pretrial conference to address expert witness deposition objections and designations. During that pretrial conference, the parties discussed Benjamin's objections and designations to Shelton's video

---

[14]The parties dispute which version of section 490.065 controls in this case. We need not address that issue because, as we explain, Benjamin's claim of error is not preserved for our review.

deposition, leading us to presume that the trial court denied Benjamin's Motion to Exclude prior to trial. It is this (apparent) trial court action about which Benjamin complains on appeal.

A motion to exclude is equivalent to a motion in limine. *Wagner v. Bondex Intern., Inc.*, 368 S.W.3d 340, 353 n.4 (Mo. App. W.D. 2012). "A ruling on a motion in limine is interlocutory and, without more, preserves nothing for appellate review." *Id.* The trial court's (apparent) denial of Benjamin's Motion to Exclude was an interlocutory ruling subject to change during the course of trial. *Beverly v. Hudak*, 545 S.W.3d 864, 875 (Mo. App. W.D. 2018). Thus, Benjamin's point on appeal raises a claim of trial court error that preserves nothing for our review.

Even if we generously construe Benjamin's point on appeal as a challenge to the admission of expert witness testimony at trial, the point would preserve nothing for our review. To adequately preserve an issue for appeal "after the denial of [a] motion in limine, a party is required to object at trial to the introduction of the evidence and reassert the objection in post-trial motions." *Kerr v. Mo Veterans Comm'n*, 537 S.W.3d 865, 880 (Mo. App. W.D. 2017) (quotations omitted).

Benjamin did not timely object to the playing of Shelton's video deposition at trial. In fact, Benjamin did not object to Shelton's video testimony until after the 55-minute video was played for the jury, and the jury had been dismissed for the evening. "To preserve for appellate review an error regarding the admission of evidence, a timely objection must be made when the evidence is introduced at trial. If the objection is not made at the time of the incident giving rise to the objection, the objection may be deemed waived or

28

abandoned." *R & J Rhodes, L.L.C. v. Finney*, 231 S.W.3d 183, 190 (Mo. App. W.D. 2007) (quotation omitted). In addition, Benjamin did not object at all to Rosales's admission of Exhibits 16A and 17A, which were, respectively, a DVD copy of Shelton's edited video deposition and an edited transcript of the deposition. Thus, even if we could construe Benjamin's point on appeal as a challenge to the admission of Shelton's testimony at trial, Benjamin has not preserved this claim of error for our review.[15]

Point Six is denied.

### Point Seven

Benjamin's seventh point asserts the trial court erred by denying its motion for a new trial because the verdict was against the weight of the evidence because "[Benjamin's] evidence supported its affirmative defense." [Appellant's Brief, p. 55]. "Weighing evidence is a trial court function." *Armon v. Griggs*, 60 S.W.3d 37, 40 (Mo. App. W.D. 2001). "An appellate court may not rule on the weight of the evidence in a jury-tried case." *Warren v. Thompson*, 862 S.W.2d 513, 514 (Mo. App. W.D. 1993). The reasons for this "longstanding rule abound." *Id.*

> The plaintiff bears the burden to prove that the defendant was negligent and that the injuries directly resulted from the defendant's negligence. When the plaintiff relies on evidence that is not legally conclusive, the defendant need not present evidentiary support and may rest on the plaintiff's failure to meet the burden of proof. The jury determines credibility. The trial court alone has discretion to grant or deny a motion for new trial on the ground that the verdict was against the weight of the evidence. The trial court's overruling a

---

[15]While we are aware of cases that permit us to review a challenge to the admissibility of expert witness testimony under our plain error standard of review, that review is discretionary. *See* Rule 84.13(c); *McGinnis v. Northland Ready Mix, Inc.*, 344 S.W.3d 804, 815 (Mo. App. W.D. 2011) (granting *ex gratia* plain error review); *Day Advertising Inc. v. Devries and Associates, P.C.*, 217 S.W.3d 362 (Mo. App. W.D. 2007). We decline to exercise that discretion here, as Benjamin's point on appeal plainly does not claim trial court error in the admission of evidence and challenges only an interlocutory pretrial ruling.

motion for new trial on that ground constitutes a conclusive determination that cannot be overturned on appeal.

*Id.* (internal citations omitted); *see also Pickett v. Stockard*, 605 S.W.2d 196, 197-98 (Mo. App. W.D. 1980).

The trial court did not err in denying Benjamin's motion for a new trial.

Point Seven is denied.

## Point Eight

Benjamin's eighth point asserts that reversal is required based on prejudice occasioned by the trial court's cumulative errors described in points one through seven. Because Benjamin has failed to establish error under any of these points, its claim of error based on cumulative prejudice is without merit.

Point Eight is denied.

## Conclusion

The trial court's Judgment is affirmed.

Cynthia L. Martin
_____
Cynthia L. Martin, Judge

All concur